1  **LaMONT DOE**
2  2934 Beverly Glen Circle
   Bel Air, California 90077
3  Telephone: (310) 226-7133; Fax: (832) 218-6811
   Email: lamontsuit@yahoo.com
4
5  **LaMONT DOE, Plaintiff, as *in propria persona***
6
7  **MICHAEL T. MELO, ESQ. SBN 218911**
8  The Melo Firm
   9000 Sunset Boulevard, Suite #1115
9  Los Angeles, California 90069
10 Telephone: (310) 993-9909; Fax: (310) 626-9787
   Email: attorney911ca@gmail.com
11
12 **[Advisory/Co-Counsel] for Plaintiff LaMONT DOE, as *in propria persona***
13
14
15
16              **UNITED STATES DISTRICT COURT**
17   **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**
18
19 LaMONT DOE,                          )  **Case No. CV 08-0237-VAP (RNB)**
20                                       )  *Honorable Virginia A. Phillips*
              *Plaintiff,*               )  *Courtroom 2 (**Riverside**)*
21                                       )  *Honorable Robert N. Block*
22                                       )  *Courtroom 6D (**Santa Ana**)*
23                                       )
                                         )  **PLAINTIFF'S [FIRST]**
24                                       )  **AMENDED COMPLAINT FOR**
25              v.                        )  **DAMAGES FOR:**
                                         )
26 THE CITY OF LOS ANGELES; THE LOS     )  **1. RACKETEER INFLUENCED**
27 ANGELES POLICE DEPARTMENT;           )  **AND CORRUPT**
   LAPD [HOLLYWOOD DIVISION];            )  **ORGANIZATIONS ACT; TITLE**
28                                       )  **18, SECTIONS 1961 AND 1962**

CHIEF WILLIAM BRATTON; CLAY FARRELL; LaMONT JERRETT; JOE DUNSTER; JERRY PADILLA; KARI HORTON; DAVID TOMILIN; RAYMOND CONBOY; DAVID TORRES; GEORGE HOOPES; JEANNE HARRIS; MICHAEL OPPELT; SILVINA YNIGUEZ; SUSAN BRANDSTETTER; SEAN MURTHA; MICHAEL KLEE; RUTH HAWKINS-YU; AARON GREEN JUAN SANCHEZ; KURT JIMMY FILLMORE.

Defendants.

) **2. DEPRIVATION OF CIVIL**
) **RIGHTS UNDER COLOR OF**
) **LAW; TITLE 42, SECTIONS**
) **1983, 1985, 1986, 1988**
)
) **3. DEPRIVATION OF CIVIL**
) **RIGHTS UNDER COLOR OF**
) **LAW; TITLE 42, SECTIONS**
) **1983, 1985, 1986, 1988**
) **(MONELL CLAIM)**
)
) **1ST, 4TH, 5TH, 6TH, 8TH, 14TH**
) **AMENDMENT VIOLATIONS:**
) **FALSE ARREST; EXCESSIVE**
) **FORCE; MALICIOUS**
) **PROSECUTION;**
) **RETALIATION FOR FILING A**
) **GRIEVANCE; FABRICATION**
) **OF EVIDENCE; CONSPIRACY;**
) **PERJURY; SUBORNATION OF**
) **PERJURY; DESTRUCTION OF**
) **EVIDENCE; DELIBERATE**
) **INDIFFERENCE TO**
) **MEDICAL NEEDS;**
) **NEGLIGENCE; FAILURE TO**
) **SUPERVISE; BREACH OF**
) **DUTIES; HARRASSMENT;**
) **WITNESS TAMPERING;**
) **EXCESSIVE BAIL; LOSS OF**
) **CONSORTIUM; FRAUD**
)
) **DEMAND FOR JURY TRIAL**

**PLAINTIFF HEREIN COMPLAINS AND ALLEGES AS FOLLOWS:**

## **INTRODUCTION**

1. Not since the soiled and filthy LAPD days of Detective Mark Fuhrman has there been such a repugnant travesty of "justice" than what may be found here within. Plaintiff LaMONT DOE ["PLAINTIFF"], proceeding *in propria persona*, but by and through the aid and assistance of his advisory co-counsel [*Michael T. Melo, Esq.*] brings forth this civil rights action for money damages pursuant to Title 42, U.S.C. Sections 1983, 1985, 1986, and 1988; in violations of PLAINTIFF's rights afforded to him under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and also for violations pursuant to the Racketeer Influenced and Corrupt Organizations Act, Title 18,U.S.C. Sections 1961, and 1962; against DEFENDANTS [THE CITY OF LOS ANGELES; THE LOS ANGELES POLICE DEPARTMENT; THE LAPD (HOLLYWOOD DIVISION); CHIEF WILLIAM BRATTON; CLAY FARRELL; LaMONT JERRETT; DAVID TOMILIN; DAVID TORRES; RAYMOND CONBOY; GEORGE HOOPES; SUSAN BRANDSTETTER; JOE DUNSTER; JERRY PADILLA; KARI HORTON; MICHAEL KLEE; JUAN SANCHEZ; JEANNE HARRIS; MICHAEL OPPELT; SILVINA YNIGUEZ; SEAN MURTHA; RUTH HAWKINS-YU ; AARON GREEN; and KURT JIMMY FILLMORE].

2. As a pro se litigant, PLAINTIFF humbly requests that this Court construe the allegations [within such Complaint] liberally, and afford PLAINTIFF the benefit of any doubt. [(see *Karim-Panahi v. Los Angeles Police Department*, 839F.2d 621, 623 (9th Cir. 1988); see also *Haines v. Kerner, 404 U.S. 519].*

3. PLAINTIFF, who is of the African-American race, is utilizing the substitute fictitious name of "*LaMONT DOE*"; pursuant to "Rape Shield Law" protections – protections afforded to PLAINTIFF (and his immediate family),

1  because of an intimately violating and [aggravated attempted] sexual assault on
2  PLAINTIFF's wife ("JANE DOE"), which occurred on February 28, 2005; and
3  which laid the foundation for (JANE DOE's) intrinsically-related and intertwining
4  other case [which is currently being litigated within another Court].

## JURISDICTION AND VENUE

7     4.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331
and 1343.  Declaratory and/or injunctive relief is authorized under 28 U.S.C.
Section 2201 and 2202.

11     5.  Venue is proper in this Court under 28 U.S.C. Section 1391 (b)
and (e) in that (1) the unlawful actions challenged herein occurred in the Central
District of California; and (2) all of the parties reside in such District.

## PARTIES

16     6.  PLAINTIFF brings this action individually.  PLAINTIFF is a competent
individual African-American adult who, at all times herein mentioned, was/is a
resident of the County of Los Angeles, and who resided within the jurisdiction of
this Court.

20     7.  Defendant THE CITY OF LOS ANGELES ("CITY") is a municipality
duly organized under the laws of the State of California.  Defendant CITY is liable
for this action because the Los Angeles Police Department is legally organized and
empowered for law enforcement under the supervision of the CITY OF LOS
ANGELES and its Charter.

26     8.  Defendant THE LOS ANGELES POLICE DEPARTMENT ("LAPD") is a
Public agency subject to suit, which is legally organized and established with the
power of law enforcement; and public policy or custom is the final authority in

enforcing the law in the City of Los Angeles under the Charter of the City of Los Angeles, and under applicable California law.

9. Defendant Chief William Bratton ("BRATTON") is the Chief of the Los Angeles Police Department ("LAPD") and an employee of CITY. At all times material to this complaint, Defendant BRATTON was, and is, the chief executive and policy-maker responsible for the LAPD's compliance with the pending Federal Consent Decree, and at all times relevant was acting "under color of law" and within the course and scope of said employment capacity. Defendant BRATTON is being sued in both his official and individual capacities.

10. Defendant LAPD Hollywood Division ("LAPD HOLLYWOOD DIVISION" or "LAPD HWD") is a division/entity of such public agency (LAPD), and is subject to suit.

11. Defendant Clay Farrell ("FARRELL") is the commanding officer sitting "at the captain's chair" of Defendant LAPD HOLLYWOOD DIVISION. Joseph DUNSTER ("DUNSTER"); Jerry PADILLA ("PADILLA"); David TORRES ("TORRES"); Kari HORTON ("HORTON"); LaMont JERRETT ("JERRETT"); Raymond CONBOY ("CONBOY"); Juan SANCHEZ ("SANCHEZ"); David TOMILIN ("TOMILIN"); George HOOPES ("HOOPES"); Michael KLEE ("KLEE"); and Kurt Jimmy FILLMORE ("FILLMORE") are also individual LAPD officer Defendants ("DEFENDANTS", or "Defendants") assigned to entity Defendant LAPD HOLLYWOOD DIVISION. DEFENDANTS Jeanne HARRIS ("HARRIS") is an individual LAPD officer Defendant assigned to the Professional Standards Bureau/Internal Affairs Division; Ruth HAWKINS-YU ("HAWKINS-YU") is an individual LAPD officer Defendant assigned to the Harbor Division; Silvina YNIGUEZ ("YNIGUEZ") and Michael OPPELT ("OPPELT") are individual LAPD officer Defendants assigned to the Robbery Homicide Division; Sean MURTHA ("MURTHA") is an individual LAPD officer Defendant assigned

to the Southeast Division; Aaron GREEN ("GREEN") is an individual defendant no longer employed by the LAPD, however was working as an individual LAPD officer under color of state law during the time period alleged within this Complaint.

## FACTS COMMON TO ALL COUNTS

12. Each and every allegation set forth in each and every averment of this pleading hereby is incorporated by reference to each and every other averment and allegation of this pleading.

13. PLAINTIFF is informed and believes and thereon alleges that all individual DEFENDANTS, at all times relevant to the allegations herein, acted under the color of state law and are therefore sued in both their individual and official capacities.

14. PLAINTIFF is informed and believes, and thereon alleges that in doing the forgoing acts, each Defendant was the agent and employee of each other Defendant, and was acting within such agency and employment under color of state law; and within the scope of their employment with the CITY OF LOS ANGELES, and the LOS ANGELES POLICE DEPARTMENT.

15. In committing the acts alleged in this Complaint, DEFENDANTS acted knowingly, callously, oppressively, wantonly, maliciously and with reckless or callous disregard with deliberate indifference to the rights allegedly violated, despicably, and with evil motive and/or intent.

16. On or about March 5, 2007, PLAINTIFF filed a claim for damages pursuant to Government Code section 910 with the State of California. Said claim was rejected on June 13, 2007.

17. At no time mentioned herein was PLAINTIFF excessively intoxicated or voluntarily incapacitated , nor a threat to the safety of himself or to others, or disorderly. PLAINTIFF did not commit any criminal offenses.

18. All DEFENDANTS acting under color of state law, violated PLAINTIFF's rights protected by the United States Constitution, in addition to analogous provisions of the California State Constitution [either by commission or omission] by engaging in (just some) of the following conduct:

A. Procuring, initiating, and pursuing the arrest, confinement, and prosecution of PLAINTIFF with malicious and evil motives, without probable cause, and with the intent to deprive PLAINTIFF of his constitutional rights to physical liberty, property, freedom from unlawful searches, freedom from excessive force and freedom from unlawful seizures in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and analogous provisions of the Constitution of the State of California.

B. Using unnecessary unlawful force and denying PLAINTIFF equal protections under the law [in violation of PLAINTIFF's rights under the First, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution], and analogous provisions of the Constitution of the State of California.

19. DEFENDANTS, their agents, and their employees used undue pressure, influence, and information [known to be false], inaccurate and misleading (whether in the form of fraudulent arrest reports and/or false testimony dripping in perjury, etc.), in order to cause the Los Angeles County District Attorney's Office to file and prosecute multiple criminal complaints against PLAINTIFF – in abusive and multiple displays of malicious, callous, oppressive, and reckless prosecutions; strategically conducted with the deliberate indifference to the rights allegedly violated; performed despicably with evil motives and intent, and in blatant disregard for PLAINTIFF's rights.

20. As a proximate result of the foregoing wrongful acts of DEFENDANTS

1  [and each of them], PLAINTIFF has been hurt and injured physically and

2  emotionally, all of which injuries have caused and continue to cause PLAINTIFF

3  great mental, physical and nervous pain and suffering, humiliation, shock, distress

4  and anguish, in a sum to be proved at trial.  Furthermore, PLAINTIFF has been

5  forced to expend significantly more expenses [out of his own pocket] specifically

6  due to the illegal, fraudulent, and malicious actions of the LAPD HOLLYWOOD

7  DIVISION officer Defendants.  Such extraordinary (but perpetual and ongoing)

8  expenses [which PLAINTIFF has incurred] include (but certainly are not limited to):

9           A. the hiring of licensed security guards and/or professional

10  chauffeurs (some off-duty sworn police officers) to accompany and drive

11  PLAINTIFF's wife [JANE DOE] around the CITY OF LOS ANGELES' environs;

12  due to the fact that JANE DOE can (and will not) EVER drive alone again at night;

13  and/or even bare the sight of (any) LAPD HWD officer (in uniform up close)

14  without regularly (and dangerously) suffering from some form of anxiety attack.

15

16           B. the necessity to pay many medical expenses (for both PLAINTIFF

17  and his spouse JANE DOE), due to the fact that BOTH have been rejected (on

18  multiple occasions) when applying to various companies [for health insurance

19  benefits], who have often identified and classified PLAINTIFF and JANE DOE as

20  "too high risk to insure"; and deemed too expensive, due to PLAINTIFF and JANE

21  DOE's afflictions from illnesses/injuries specifically (and primarily) caused by the

22  abusive and violent acts of the (within) LAPD HOLLYWOOD DIVISION officer

23  Defendants.

24           21. The wrongful acts of the individual DEFENDANTS were willful,

25  oppressive, fraudulent, and malicious; and were conducted in reckless disregard for

26  PLAINTIFF's Federal constitutional rights; thereby entitling PLAINTIFF to

27  punitive damages.

28

## MONELL ALLEGATIONS

22.  PLAINTIFF is informed and believes, and on the basis of such information and belief, alleges that DEFENDANTS THE CITY OF LOS ANGELES, THE LOS ANGELES POLICE DEPARTMENT, Chief William BRATTON, Captain Clay FARRELL, and the LAPD HOLLYWOOD DIVISION; with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights [of PLAINTIFF, and all other persons similarly situated]; maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things:

A. Subjecting people to unreasonable uses of force against their persons.

B. Selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence, and other misconduct towards arrestees.

C. Failing to adequately train, supervise, and control employees in the use of excessive force, physical abuse and harassment towards its arrestees;

D. Ignoring the letter and spirit of the consent decree entered into with the United States Department of Justice;

E. Failing to adequately discipline officers involved in misconduct; and

F. Condoning and encouraging employees in the belief that they can violate the rights of persons (such as PLAINTIFF) with impunity; and that such conduct will not adversely affect their opportunities for promotion and/or other employment benefits.

G. Condoning the suppression of evidence favorable to criminal defendants and allowing false criminal charges to be brought against innocent people, especially individuals who have previously complained about illegal LAPD officer conduct.

H. Systematically failing to adopt procedures that would prevent officers

1  from fabricating false criminal charges against civilians in order to cover up police
2  misconduct. Such would include the : manufacturing and fabrication of evidence
3  purported in fraudulent arrest reports; further (and even more fraudulently) repeated
4  and regurgitated within preliminary hearing testimonies and/or criminal trials.

5
6  ### *LAPD HOLLYWOOD DIVISION – A Cesspool of Fraud (Pattern and Practice)*
7      23. The Defendant LAPD HOLLYWOOD DIVISION officers have (and
8  continue to) exhibit a pattern, practice, and propensity for abusive and violent
9  behavior towards arrestees [and very often against minority arrestees] such as
10 PLAINTIFF (who is Black). PLAINTIFF alleges and believes that the Defendant
11 LAPD HWD DIVISION's Supervising Sergeants and Commanding Officer
12 (Defendant Captain Clay FARRELL) condone and even promote such illegality and
13 brutality.
14
15     24. Evidentiary support supporting such can be found within a November 20,
16 2006 [Los Angeles Daily News] article, containing free- flowing direct quotes with
17 accompanying photograph [of LAPD HWD DIVISION Commanding Officer
18 Defendant FARRELL]. Within such article, FARRELL proudly and approvingly
19 identifies and labels his fellow LAPD HWD DIVISION officers as (aggressive and
20 combative) "**warriors**", who are advised (by FARRELL himself, and also his HWD
21 DIV Supervising Sergeants) to perform abusive "storm-trooper-like" physical
22 brutality on their arrestees.
23     25. Such article was generated in response to the abhorrently shocking
24 physical beating (caught on video) that 2 [LAPD HWD DIV officers (Patrick Farrell
25 and Alex Schlengel) had recently inflicted upon (from information and belief) a
26 helpless, non-combative, and non-physically- resisting arrestee (not of White, but of
27 minority descent). As the video demonstrates, one officer (Schlengel) had
28 immobilized the arrestee's lower extremities, while the other LAPD HWD DIV

Officer (Patrick Farrell) grabbed the arrestee by his neck, almost choking (the arrestee) to near suffocation and death.

26. Furthermore, Officer Farrell repeatedly smashed that arrestee's face with his closed fist.   Such malicious, abusive, and personally satisfying "exchange" (Schlengel is shown apparently giggling) occurred when that arrestee was firmly pinned on his back, while helplessly flailing his arms, and while begging for mercy (not to mention air to breath).

27. Despite the fact that (such video) distinctly showed such, that arrestee (in very similar fashion to PLAINTIFF within this instant action) was falsely and ridiculously charged [by the same, identical Defendant LAPD HWD DIV Watch Commander Sgts.] with **Felony P.C. 69 "Resisting Arrest"**.

28. Interestingly, the two LAPD HWD DIVISION Supervising Sergeants [who are quoted in the article (Defendant David TOMILIN and Sgt. Karen Leong)] are directly involved within PLAINTIFF's related and intertwined criminal case (which arises from the identical causations and circumstances as this instant case) – Defendant TOMILIN as PLAINTIFF's January 14, 2006 "Use of Force" Investigating Sergeant; and Sgt. Leong as PLAINTIFF's January 14, 2006 HWD DIV Watch Commander supervising and overlooking his false arrest, and who "signed off" on his (prolonged) illegal detention.   In fact, Sgt. Leong had improperly authorized the (attempted but rejected) filing of the multiple, excessively inflated, and bogus felonies alleged by DEFENDANTS DUNSTER and FILLMORE, purportedly committed by PLAINTIFF on January 14, 2006, including (but not limited to) P.C. 243 "Battery on a Police Officer, with Injury", P.C. 71 "Threatening a Public Official", P.C. 422 "Criminal Threats", etc.

29. Both (interviewed) Supervising Sgt.'s (TOMILIN and Leong) connote that the LAPD HWD DIV officers [when confronted with the frequent (from information and belief) allegations of physical abuse and/or excessive force on their

1   ("victim") arrestees (regardless of whether such allegations were/are substantiated

2   or not), that the Defendant LAPD HWD DIVISION officers are conditioned to

3   provide support for and corroborate their fellow HWD DIVISION officers' (both

4   written and verbal) rendition of events.  Such HWD DIV *"camaraderie/esprit de*

5   *corps"* (according to the 2 HWD DIV Sgts. within the article) exists because the

6   LAPD HOLLYWOOD DIVISION functions and operates as a *"family, as brothers*

7   *and sisters"*.

8       30. Within this instant action, (both) Defendant TOMILIN and Sgt. Leong

9   condoned and promoted such "freight-train- sized" levels of excessive force

10  performed on PLAINTIFF [during his January 14, 2006 illegal and warrantless

11  seizure – a seizure accompanied by an arrest report (authored by Defendants

12  DUNSTER, FILLMORE, TOMILIN, and OPPELT) which was intentionally and

13  maliciously saturated with gross inaccuracies and material misrepresentations; albeit

14  corroborated by Defendant TOMILIN and Sgt. Leong' "approval".

15

16

17  ## *LAPD HWD DIVISION – An Even Bigger Cesspool of Fraud*

18      31. Entity Defendant LAPD HWD DIVISION [at behest of Defendant

19  FARRELL] has (and continues to still) engage in a daily pattern and practice of

20  fraud; fraud regularly committed by the (HWD DIV) officers' pervasive fabrication

21  of evidence, their manufacturing of probable cause, and perjury.

22      32. As evidentiary support, PLAINTIFF points to the (very) recent Los

23  Angeles Superior Court Case # BA325440: *The People of the State of California*

24  *vs. Guillermo Alarcon Jr.*, CCB Division 121, the Honorable Monica Bachner

25  presiding.    Such criminal matter was dismissed by Judge Bachner (on June 30,

26  2008) when Judge Bachner issued a decision, ruling that defendant (Alarcon) as

27  "factually innocent".  Such specialized and uncommon (on-the-record) Judicial

28  acknowledgement (with corresponding and accompanying Dismissal Order) was

1  necessary in that case, specifically due to the all-encompassing fraud committed by

2  defendant Alarcon's **LAPD HOLLYWOOD DIVISION** arresting officers.  Within

3  such case, the Court ruled that Alarcon's arresting HWD DIVISION officers

4  [Manuel Ortiz, Richard Amio, and Evan Samuel] engaged in the morally "devoid"

5  and multiple atrocious acts of (1) planting evidence for the soiled purpose of

6  fraudulently linking narcotics to the defendant, in order to justify defendant's false

7  arrest; (2) manufacturing and fabricating statements and events which the HWD

8  DIV officers fraudulently placed within defendant Alarcon's arrest report; (3)

9  destroying evidence by editing out and truncating exculpatory (and beneficial to the

10 defense) recordings which had been captured and memorialized on tape; and (4) by

11 blatantly committing perjury [on multiple occasions (once within an April 29, 2008

12 Penal Code 1538.5 [Motion to Suppress] Hearing, and also at the June 27, 2008 Jury

13 Trial)].  Such came about when the defense produced a videotape that indisputably

14 contradicted Alarcon's HWD DIVISION arresting officers' sworn (and false)

15 testimonies.  In fact, the defense produced an audiotape of a conversation between

16 Alarcon's 2 LAPD HWD DIVISION arresting officers, acknowledging the HWD

17 DIVISION's permissible and regular pattern and practice of fraud [specifically

18 pertaining to the HWD DIV's arrest report "formulating" procedures].  As noted,

19 and as captured on audiotape, one HWD DIVISION officer advises (the other

20 equally as comfortable and as consenting arresting officer): "don't forget to be

21 creative", when producing and generating facts supposedly necessary to establish

22 the existence of "probable cause", which supposedly led to defendant Alarcon's

23 arrest.

24        Such HWD DIVISION arresting officer's (verbal) advice was (even more

25 comfortably) received and acknowledged [perhaps (from information and belief)

26 due to the officers' (and HWD DIV. as a whole) regular and every-day practice of

1   such arrest report-writing fraud)] by the other HWD DIV. officer's response of: "No

2   Doubt".

3       33. PLAINTIFF is informed and believes, and on the basis of such

4   information and belief alleges, that DEFENDANTS THE CITY OF LOS

5   ANGELES, THE LOS ANGELES POLICE DEPARTMENT, Chief William

6   BRATTON, Captain Clay FARRELL, and the LAPD HOLLYWOOD DIVISION

7   ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and

8   usages permitting the other DEFENDANTS herein to engage in the unlawful and

9   unconstitutional actions, policies, practices, and customs or usages set forth in the

10  above paragraphs.  DEFENDANTS' conduct, as alleged herein, constitutes a pattern

11  of constitutional violations based (either on) a deliberate plan by DEFENDANTS, or

12  on DEFENDANTS' deliberate indifference, gross negligence, or reckless disregard

13  for the safety, security, and rights of PLAINTIFF.

14      34. PLAINTIFF alleges and believes that it was/is FARRELL's public

15  acquiescence of such fraud that has permitted (the identified) violations to occur

16  (BOTH) within this instant action, in addition to (multiple and unrelated) others.

17  Also it is alleged that prior failures to investigate police misconduct, and/or

18  discipline police personnel found culpable for misconduct, inadequate investigations

19  and/or inadequate discipline imposed for police misconduct.   Such prior failures

20  therefore make the [entity] Defendants liable for such police misconduct.

21      35. Defendant CITY is liable for all injuries sustained by PLAINTIFF as set

22  forth herein.  CITY'S liability arises from the fact that DEFENDANTS' policies and

23  customs were a direct and legal cause of PLAINTIFF's damages.

24      36. Every individual Defendant [in his/her official capacity] knowingly, or

25  grossly negligently [or with deliberate indifference to the rights allegedly violated],

26  caused to come into being, maintained, fostered, condoned, approved of [either

27  before the fact or after the fact], ratified, took no action to correct an official policy,

28

practice, procedure, or custom [of permitting the occurrence of the categories of wrongs set forth in this pleading]; and/or improperly, inadequately [and with deliberate indifference to the Constitutional and/or other Federal rights of persons], knowingly, or grossly negligently [or with reckless disregard to Constitutional and/other Federal rights], failed properly to train, to supervise, to retrain (if necessary), to monitor, or take corrective action with respect to the police [and with respect to the types of wrongful conduct alleged in this pleading], so that each one [of them] is legally responsible for ALL of the injuries and/or damages sustained by PLAINTIFF, pursuant to the principles set forth in *Monell v. New York City Department of Social Services,* (1978) 436 U.S. 658.

37. As a direct, legal, and proximate cause of the grossly negligent, unreasonable, and unconstitutional customs, practices, policies, and procedure, as alleged herein, PLAINTIFF suffered (and continues to suffer) pain and suffering, severe mental and emotional distress from the herein incidents of excessive uses of force, incurred loss of dignity, increased and elevated loss of income, accumulation of necessary medical expenses, the substantial and multiple expenditures for legal/investigatory fees [pertaining to (not only) this instant matter, but also for the intertwined/related criminal case], for PLAINTIFF's defense pursuant to the false and malicious allegations of individual Defendants DUNSTER, FILLMORE, TORRES, JERRETT, KLEE, SANCHEZ, BRANDSTETTER, HOOPES, GREEN, TOMILIN, YNIGUEZ, HORTON, PADILLA, MURTHA, HAWKINS-YU, and OPPELT.

38. Additionally, PLAINTIFF is also entitled to, (and seeks) injunctive and/or declaratory relief from the (herein described) unconstitutional policies, practices, and procedures (or the gross lack of) DEFENDANTS [THE CITY OF LOS ANGELES, THE LOS ANGELES POLICE DEPARTMENT, and LAPD HOLLYWOOD DIVISION].

# BRIEF HISTORY AND STATEMENT OF FACTS

## *February 28, 2005: Plaintiff's Wife is Sexually Molested at LAPD HWD*

39. On February 28, 2005, and at approximately 3:15 a.m., PLAINTIFF's wife ("JANE DOE"), while driving alone, and following a girlfriend in a 2-car caravan, pulled along-side DEFENDANTS DUNSTER and FILLMORE, whose squad car was parked in the furthest East/Northbound lane, at the intersection of Highland Ave. and Santa Monica Blvd.

40. PLAINTIFF alleges and believes that DEFENDANTS DUNSTER AND/FILLMORE were (at that time) partaking in their beloved Del Taco "Code 7, mid-shift snack" of burritos and corn chips.

41. Upon reaching DEFENDANTS FILLMORE and DUNSTER's squad car, and while JANE DOE's car was stopped at a red light, DUNSTER rolled down his (driver-side) window, puckered up his lips, and "blew a kiss" at JANE DOE. Slightly amused, but nervously flustered at DUNSTER's brazen "chivalry", JANE DOE ignored the officers, drove off after her girlfriend's car towards home, not a second after the light turned green. In apparent disbelief that JANE DOE could be so callous and disinterested in their (supposed) HWD DIVISION "sexiness", the two officers followed her northbound along Highland Avenue. This (increasingly) antagonistic and intimidating situation eventually turned into a dramatic (false arrest/illegal detention) fiasco wherein JANE DOE had (at least) 16 guns pointed at her, where she was forced to crawl (spread-eagled) onto the pavement wearing only a short, party dress – a revealing sight, harshly illuminated by the bright lights of the 8 squad cars that pulled her over (in addition to the overbearing spot-light from the LAPD air-ship helicopter circling above). JANE DOE was handcuffed, violently

1  hoisted and yanked off the ground (by Defendant DUNSTER) and eventually placed

2  into the back of DUNSTER's squad car, but not before DUNSTER and FILLMORE

3  publicly belittled and falsely denigrated her as a supposed "high class Hollywood

4  escort/prostitute".  Furthermore, JANE DOE was repeatedly intimidated, threatened

5  with deportation and the eventual recipient of multiple LAPD HOLLYWOOD

6  DIVISION officer-proffered sexual innuendos and comments, pertaining to her

7  "perky little ass and/or smoking hot fake tits".

8      42.  Upon cursory investigation of her illegal detention, NO CHARGES were

9  ever filed against JANE DOE (because she had committed no crime); but while her

10  two arresting officers (DUNSTER and FILLMORE) had her in their illegal

11  detention/custody, FILLMORE took it upon himself to lock her in a

12  **HOLLYWOOD DIVISION Station House BATHROOM**, in order to prevent

13  (his and her) interaction with any other officers (or female arrestees), who could

14  witness and/or potentially report his illegal and abusive actions.

15      43. While alone, and without a female officer present **(which is mandated by**

16  **law)**, Defendant FILLMORE attempted to persuade JANE DOE into acquiescing to

17  his romantic gestures by joining him on a date (sometime in the near future when he

18  was off-duty).  When JANE DOE rejected FILLMORE's amorous efforts, (stating

19  that she was happily married), FILLMORE retaliated by treating JANE DOE like a

20  "zoo animal" : (1) by squeezing her buttocks and caressing her hands and arms [as

21  he supposedly attempted to apply handcuffs on her; then remove the cuffs; then

22  apply them again; lock; unlock; then slowly roll up her sleeves, in order to

23  deliberately and intentionally bound her bare-skinned wrists directly against the cold

24  metal cuffs].  Meanwhile, throughout such [Defendant FILLMORE-guided "*Blond*

25  *Damsel in Distress, In Short Skirt and Handcuffs Roll-Play Bondage Fantasy*"],

26  Defendant FILLMORE never ceased in such (junior-adolescent behavior) as

27  fondling her breasts [upon interrogating her as to whether such "perky little things"

28

were "real or fake"]; or shoving her unwashed, pink, bikini-bottom panties to his face [which she had just recently changed out of earlier in the evening], and to which FILLMORE repeatedly referred to as "sweet and yummy".  Such "inexcusable, nonconsensual violations of JANE DOE'S intimate bodily integrity" occurred when FILLMORE removed her panties (with his bare ungloved hands) from out of JANE DOE'S side jacket pocket, during his illegal, self- aggrandizing, cross-gender, supposed (custodial to arrest) search of JANE DOE'S body and clothing – and (making such "catastrophe" even more repugnant) with JANE DOE's hands and wrists cuffed firmly behind her back.

JANE DOE'S February 28, 2005 "first date" with Defendant FILLMORE entailed her being illegally detained (and essentially kidnapped) : the results of Defendant FILLMORE's prolonged deprivation of her inherent liberty rights, without (any) due process of law; and in the blatant and multiple violations of [not only] Title 42, U.S.C. Section 1983 Federal Civil Rights Statutes; but also of Federal Title 18, U.S.C. Section 242 and Title 18, U.S.C. Section 924 c(1)(A)(i) Criminal Regulations - due to the fact that FILLMORE's abhorrent acts were committed while he was brandishing a firearm.

44.    Such "Girls-Gone-Wild"-inspired antics were not only a blatant violation of JANE DOE's Fourth Amendment privacy rights, but also exemplified "behavior of a governmental officer that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  (see *Hawkins v. Holloway,* 316 F.3d 777, 780 (8th Cir. 2003), quoting *County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).*

## *PLAINTIFF'S  Confrontation with Defendant Dunster at LAPD HWD Station*

45. Upon her March 1, 2005 release from the Van Nuys Jail, JANE DOE immediately attempted to press (both) administrative and criminal charges against

DEFENDANTS DUNSTER and FILLMORE.  Upon such initial attempt, JANE DOE (accompanied by PLAINTIFF) encountered Defendant DUNSTER at the HOLLYWOOD DIVISION Station front desk, who outwardly expressed his anger – most likely (from information and belief) due to the fact that DUNSTER (and his partner FILLMORE) specifically were the subjects (and targets) of such complaint. Consequently, DUNSTER impeded JANE DOE from initiating such investigation, by creating a combative and confrontational environment wherein he personally insulted (both) JANE DOE, and PLAINTIFF, whose sole role was to support his spouse in initiating such nauseating process.

46. In order to prevent any further undesired confrontation, JANE DOE (and PLAINTIFF) left the station, only to return a few days later (this time accompanied by private security).  Upon her arrival, PLAINTIFF asked to speak with the Watch Commander (Defendant TORRES), in order to properly proceed towards their mission of holding JANE DOE's "arresting" officer DEFENDANTS accountable for their egregious and sickening acts.

47. LAPD HOLLYWOOD DIVISION Watch Commander Defendant TORRES illegally rejected JANE DOE's attempt at filing any formal complaint against DEFENDANTS FILLMORE AND DUNSTER.

48. In response, JANE DOE faxed an April 2005 letter with specific instructions to Defendant TORRES and HWD DIV(Automobile Chief) Detective Thomas Chebolek, that any (and all) documents/evidence pertaining to her February 2005 false arrest and illegal detention be preserved and not destroyed.

### *Defendant Yniguez Tracks Plaintiff Down Like a Rodent*

49. In April 2005, LAPD Pacific Division's Defendant YNIGUEZ (seemingly out of the clear blue sky) vigorously tracked down PLAINTIFF, while PLAINTIFF was home on the East Coast.  YNIGUEZ left several entrapping voicemails at

PLAINTIFF's LA residence, including some with odd and urgent phrases such as: "it is very important and for your own good to call me back". When reluctantly finally doing so, PLAINTIFF was bombarded with invasive (and slanted) interrogations (propounded by YNIGUEZ) about such tangential matters a (strangely reoccurring) un-deposited $7,000 addressed to Plaintiff; in addition to further inappropriate questions pertaining to PLAINTIFF's wife –or (using YNIGUEZ's words), "the blond girl in the car".

50. Unearthed by such line of questioning, PLAINTIFF abruptly ended the conversation, but not before YNIGUEZ threatened PLAINTIFF with eventual arrest. Upon information and belief, YNIGUEZ had already spoken with the Defendant HOLLYWOOD DIVISION officers (already at that time under scrutiny), because there was no other way for YNIGUEZ to have known about a $7,000 check (which was included among items on JANE DOE'S 2/28/05 arrest report property receipt), in addition to other mentioned specifics about JANE DOE's previous false arrest and illegal detention. Upon information and belief, the LAPD HWD DEFENDANTS attempted to utilize YNIGUEZ as a tool in order to intimidate PLAINTIFF (and JANE DOE) into not pursuing any venues of formal retribution, and/or accountability.

### YNIGUEZ Orchestrates and Celebrates PLAINTIFF's First False Arrest

51. At the inception of Memorial Day Weekend (2005); and pursuant to YNIGUEZ's previous admonishment, 3 gun-toting LAPD Pacific Division officers arrived at PLAINTIFF'S residence at midnight, forced themselves through the door (when JANE DOE answered), and seized/handcuffed PLAINTIFF in his living room (while he was half naked, wearing only a pair of boxer shorts).

52. PLAINTIFF was arrested completely without probable cause, he was physically seized and dragged all the way down to the LAPD Pacific Division Station, where he was falsely charged with the **same crime for which his wife**

1 **(JANE DOE) was previously falsely arrested for; and for which all charges**

2 **(against her) had already been dropped.**

3    53. After such retaliatory seizure, PLAINTIFF was subjected to abhorrent jail

4 conditions (where he was stripped-searched naked), and he was forced to retain the

5 services of a private law firm in order to combat such false (and maliciously

6 motivated) felony charges.   YNIGUEZ blatantly falsified her arrest/investigative

7 report, and blatantly contradicted herself on the record (and under oath) when

8 testifying during PLAINTIFF's March 2006 Preliminary Hearing, about events

9 located within her self-authored arrest report.

10    54. Defendant YNIGUEZ was so adamant and aggressive (although

11 unsuccessfully) in bringing about PLAINTIFF's (intended) conviction, that [on the

12 very same March 2006 day of PLAINTIFF's Preliminary Hearing], YNIGUEZ went

13 personally to the office of the General Manager [of Fox Rental Car Company], and

14 threatened [the manager] with immediate arrest and Contempt of Court procedures

15 if he did not [right away, literally at that second] jump into her dark blue LAPD-

16 issued Crown-Victoria Detective car, and drive with her to the LAX-division

17 courthouse to testify against PLAINTIFF.

18    55. Such coercive and outrageous demonstration of witness intimidation was

19 necessary, because that witness (and all others from the FOX Rental Car Agency)

20 had vehemently refused to cooperate with (any) prosecution of PLAINTIFF; for

21 FOX held PLAINTIFF in high regards (both) personally and professionally, and had

22 (even to the day) considered PLAINTIFF (and JANE DOE) to be one of (FOX's)

23 most loyal and profitable customers.

24    56. As anticipated, ALL charges against PLAINTIFF (pertaining to the

25 aforementioned May 2005 Defendant YNIGUEZ false arrest) were dismissed and

26 expunged on Valentine's Day (February 14, 2008); but not before several

27 unnecessary years of baseless litigation, exorbinate legal and investigatory fees,

28 expended energy and wasted resources.

57. The evidence shall demonstrate that Defendant YNIGUEZ worked in concert and collusion with the LAPD HOLLYWOOD DIVISION DEFENDANTS, including (but certainly not limited to) DUNSTER, FILLMORE, and TORRES, etc.; in order to harass PLAINTIFF by manufacturing and fabricating false crimes/evidence against him.   PLAINTIFF's arrest and subsequent malicious prosecution was/is a retaliatory intimidation tactic, executed (against PLAINTIFF and JANE DOE) in response to JANE DOE's March 2005 [filing of her] grievance and personnel complaint against the LAPD HOLLYWOOD DIVISION criminals who abused her.

### *Second False Arrest – LAPD HOLLYWOOD DIVISION (Jan. 14, 2006)*

58. On January 14, 2006 at 3:15 pm [and once again during one of their Code 7 lunch/snack sessions], Defendants DUNSTER and FILLMORE coincidentally crossed paths with PLAINTIFF, while PLAINTIFF and JANE DOE were peacefully having lunch with a newly- acquainted, potential female business companion. Seemingly for the purpose of instigating a confrontation, and in a vile act of "above the law" arrogance and intentional infliction of infantile harassment/intimidation tactics, Defendant FILLMORE licked his tongue in the air towards JANE DOE (from across the outside patio) in a nasty and sickening sexual motion; or perhaps because of FILLMORE's intended attempt at moistening his chapped lips [depending on who was telling the story at the time].

59. As PLAINTIFF went to protect his wife, and when he insisted and demanded that they stop harassing/"licking at her", etc. [especially in light of that fact that they were the subjects of multiple (supposed) LAPD Internal Affairs investigations (or not) into similar, previous illegal (sexually-laced) conduct towards her], PLAINTIFF was grabbed [by FILLMORE AND DUNSTER], and hurled against an iced tea machine face-first, which caused it to topple over and explode.

60. DUNSTER and FILLMORE then picked PLAINTIFF up off of his feet, and body slammed him onto his back with such brute force [approximately 680 lbs. of accumulated torque and (3 bodies falling-to-the-ground)] mass, that PLAINTIFF was immediately jolted and rendered (temporarily) unconscious.  DUNSTER and FILLMORE then proceeded to slam PLAINTIFF's face and head into the hard concrete floor; and joining the fray were LAPD HOLLYWOOD DIVISION Defendant officers HAWKINS-YU and MURTHA, who also slammed their LAPD-issued black leather, steel-toed, rubber-soled boots and knees into PLAINTIFF's back, legs, and neck.   HAWKINS-YU and MURTHA (even after PLAINTIFF had been handcuffed and "neutralized"), then tied up PLAINTIFF's legs and angles (all while PLAINTIFF was still on the concrete floor and writhing in pain) with a rope-type hobble device, which rendered PLAINTIFF completely immobile.

61. DUNSTER (from information and belief), still not satisfied with the results of his original "beat-down", tightened PLAINTIFF's handcuffs so excessively, that PLAINTIFF's wrists began to painfully bleed, causing lasting physical damage, for which PLAINTIFF had to seek medical treatment, which continued (even to the day).

62. The trauma to PLAINTIFF's body was so excessive that PLAINTIFF had to be transported (while in custody) to the Emergency Room of California General Hospital Center, where PLAINTIFF was diagnosed with a cerebral concussion, cervical strain, and fractured vertebrae.

### *DUNSTER Falsely Arrests PLAINTIFF's Wife (AGAIN)!!!*

63. Following PLAINTIFF's "WWF-style take-down", DUNSTER watched JANE DOE's movements "like a hawk" (diagonally) from across the restaurant. The instant he saw JANE DOE walk out of the main restaurant area (towards the bakery), DUNSTER sprinted after her (practically at full speed) and towards Defendant HAWKINS-YU, whereupon he ordered HAWKINS-YU and several

1   other HWD DIV officers [seemingly in some form of (intense) strategy/information
2   "briefing", which lasted no less than 14 seconds] to immediately chase after "the
3   blond girl, his (PLAINTIFF's) wife" [while pointing at her, as she was walking out
4   of the bakery's east-side entrance, accompanied by her lunch companion and
5   another HWD DIV officer, who was intending on taking the 2 ladies' statements],
6   "because she needs to be taken into custody". As such, and pursuant to
7   DUNSTER's order, the 3 (now DUNSTER-informed) HWD DIV officers
8   aggressively paraded towards the patio and east entrance of the bakery, and
9   physically seized and detained (both) JANE DOE and her [shell-shocked] lunch
10  companion. The HWD DIVISION officers snatched the ladies' purses off their
11  shoulders, grabbed their arms, handcuffed their wrists behind their backs, and
12  informed them they were being placed under arrest, pursuant to the orders of HWD
13  DIV officer Defendant Joe DUNSTER.

14      64. PLAINTIFF is informed and believes that DUNSTER's motives [in
15  falsely orchestrating JANE DOE's January 14, 2006 seizure (at Roman's
16  Restaurant) ] were promulgated by his dim-witted and grossly inadequate attempts
17  to further harass, intimidate, and humiliate PLAINTIFF (and JANE DOE), so that
18  JANE DOE would again be apprehended (at the same exact time) that her husband
19  (PLAINTIFF) was tied up on the floor like a wild animal, writhing and twisting with
20  the gripping pain of a misaligned spinal column.

21      65. Defendants DUNSTER, FILLMORE, HAWKINS-YU, MURTHA, and
22  TOMILIN canvassed the restaurant searching for any (and all) percipient witnesses
23  who would (hopefully) say anything negative about PLAINTIFF, for the purposes of
24  corroborating DUNSTER's and FILLMORE's stories. Each and every percipient
25  witness who disagreed with (such officers' false renditions) was ordered to
26  immediately leave the restaurant; such witnesses [which PLAINTIFF's investigators
27  were forced to track down retro-actively] were not permitted to provide statements
28  (for the purposes of placement into PLAINTIFF's arrest report).

66. PLAINTIFF is informed and believes that DUNSTER and FILLMORE [for the specific purposes of covering their own illegality in effectuating PLAINTIFF's illegal seizure and "beat down"] manufactured and accused PLAINTIFF of such bogus charges such as: *P.C. 243 "Battery on a Police Officer, with Injury" ; P.C. 148 (a) "Resisting Arrest, Delay or Obstruct"; P.C. 415 (1) "Challenging Police Officers to a Fight"; P.C. 415 (2) "Disturbing Another by Loud or Unreasonable Noise"; P.C. 415 (3) "Offensive Words In a Public Place Likely to Cause a Violent Reaction"; P.C. 71 "Threatening a Public Ofcr"; P.C. 422 "Criminal Threats"; and P.C. 69 "Resisting an Executive Ofcr".* To DUNSTER, TORRES, and FILLMORE's dismay, however, every charge was rejected/dismissed by the Los Angeles County District Attorney's Office, with the sole exception of P.C. 69 *"Resisting Arrest"*.   Once again, PLAINTIFF (not even a full-time resident of California, but officially based on the East Coast) was forced (even to the day) to endure ongoing and perpetual years of baseless litigation, exorbinate legal and investigatory fees, expended energy and wasted resources.

### *LAPD HOLLYWOOD DIVISION Raises PLAINTIFF's Bail To $500,000*

67. In direct violation of PLAINTIFF's Eighth Amendment rights, LAPD Officer Defendants CONBOY and TORRES punitively and abusively increased PLAINTIFF'S bail to $500,000, intentionally ensuring that PLAINTIFF surely spend an extra 5 days in custody (in excruciating pain with a fractured back); until which time PLAINTIFF was able to see a judge at arraignment.  In addition, Defendant CONBOY attached a computerized "bail block" on PLAINTIFF's file, in order that any (pre-arraignment) bail deviation attempt be automatically rejected.

68. Finally, late in the afternoon on Wednesday, January 18, 2006, the arraignment judge ruled that PLAINTIFF's bail figure was excessively inflated, and lowered such by $475,000 (to the figure of $25,000).   PLAINTIFF ended up spending another 30 hours in jail custody, however [even **AFTER** his bail was

1  posted] , due to the over-saturated, over-occupied, "busting at the seams" conditions
2  of the downtown Los Angeles Inmate Reception Center/Twin Towers Correctional
3  Facility, which apparently had a 2-day-in-length booking process – a booking
4  process where PLAINTIFF was forced to stand (for hours upon hours) butt-naked in
5  a locked, oxygen-devoid holding tank, jammed in like sardines, shoulder to shoulder
6  [with not even an inch of extra space in-between, front and back, and side to side]
7  with (at least) 50 other felons [in just that particular room, of which there were many
8  more lined up in succession], who were being processed at that time.

9

10

11  **14TH AMENDMENT [DUE PROCESS RIGHTS] EVAPORATE**

12

13  ***PLAINTIFF's Fictionalized [HWD DIV] Arrest Report***

14       69. LAPD Defendants OPPELT [the LAPD 'Robbery Homicide Division'
15  Investigating Officer assigned to PLAINTIFF's January 14, 2006 false arrest and
    warrantless seizure], Defendant TOMILIN [LAPD HOLLYWOOD DIVISION
16  Supervising Use-Of-Force Investigating Sergeant], Defendants DUNSTER and
17  FILLMORE [LAPD HOLLYWOOD DIVISION arresting officers] both covertly
18  and overly conspired to write PLAINTIFF'S false and bogus January 14, 2006 arrest
19  report.
20       70. Such report [accompanied by its "follow-up investigatory" supplements]
21  was generated with the blatant intent to impugn and malign PLAINTIFF (both pre
22  and post arrest); in addition to inflate and exaggerate the severity (and existence) of
23  DUNSTER's and FILLMORE's alleged physical injuries.  Such (documented,
24  sustained officer injury) was necessary (not only) to sustain DUNSTER and
25  FILLMORE's false January 14, 2006 felony P.C. "Battery on a Police Officer, With
26  Injury" charges against PLAINTIFF (a feeble ploy which eventually failed); but
27  [perhaps more importantly] to provide the necessary bogus documentation for
28

Defendant FILLMORE to be awarded a multiple-month fully compensated "don't show up to work" Cambridge LAPD Workers Compensation Benefits Claim, for which FILLMORE purported was due to [on the job] injuries he supposedly sustained on January 14, 2006 (the day of PLAINTIFF's arrest), and which were allegedly caused by PLAINTIFF.

**Note**: Defendant FILLMORE testified (under oath) at PLAINTIFF's April 19, 2007 Preliminary Hearing in (CCB Division 44), that FILLMORE had (and continues to) painfully suffer in agony **each and every day** since PLAINTIFF's January 14, 2006 arrest.

71. PLAINTIFF's January 14, 2006 arrest report contained factually incorrect events, which were over- embellished to the point of hyperbole, and carelessly ripe with inconsistencies and contradictions.  In fact [within such falsified and sloppily written arrest report], Defendants DUNSTER, FILLMORE, OPPELT, and TOMILIN couldn't even accurately identify (which one) of PLAINTIFF's arresting officers (whether DUNSTER or FILLMORE) was the actual one whose neck was supposedly broken by PLAINTIFF – an alleged "fracture" which paved the way (just temporarily) for PLAINTIFF's bogus 1/14/06 P.C. 243 "Battery on a Police Officer, With Injury" charges.

72. As noted, PLAINTIFF's arrest report read:  "**Officer DUNSTER** was injured, requiring hospitalization for a compression fracture to one of his upper vertebrae and probable ligament damage in his neck area".  However it was FILLMORE who applied for (and was successfully awarded) the aforementioned financial Workers Compensation Benefits "Gift".  In addition (and providing even more fodder and confusion to this LAPD HWD DIV testimonial circus), Defendant DUNSTER [when asked (by PLAINTIFF's privately retained defense counsel during cross-examination at PLAINTIFF's first Preliminary Hearing in April 2006) about the existence of any injury DUNSTER (or any other officer) had sustained

1  due to PLAINTIFF's supposed January 14, 2006 "resistance"] was unable to
2  remember (such bogus falsities which DUNSTER had previously and personally
3  placed into PLAINTIFF's arrest report); and stated (on the witness stand) that "I
4  would have to refer to my report to refresh my memory".

5

6  ### *LAPD Evidentiary Destruction and Sabotage*

7  73. In further violation of PLAINTIFF's Fourteenth Amendment due process
8  rights, DEFENDANTS illegally destroyed material evidence that was expected to
9  play a significant role in PLAINTIFF's criminal defense.  Such evidence possessed
10  an exculpatory value (that was apparent before the evidence was destroyed), and
11  was of such a nature that PLAINTIFF (perhaps) was unable to obtain comparable
12  evidence by other reasonably available means. (see *California v. Trombetta* (1984)
13  467 US 479, 488, 81 L Ed 2d 413, 422, 104 S Ct 2528.)

14

15  ### *Romans' Restaurant Security Footage is Spliced and Cut*

16  74. To PLAINTIFF's detriment, and in furtherance of PLAINTIFF's criminal
17  conviction for the (LAPD HWD DIV's) attempt to prevent the filing of and
18  litigation of this instant civil action, pursuant to *Heck v. Humphrey,* 512 U.S. 477
19  (1994), Defendants OPPELT, TOMILIN, TORRES, DUNSTER, JERRETT,
20  BRANDSTETTER, and FILLMORE blatantly violated discovery rules, including
21  the (multiple) judicial orders (pertaining to those rules).  For instance, Defendant
22  OPPELT finally turned over a video of PLAINTIFF's 1/14/06 fracas (that was in the
23  custody and control of the LAPD, 2 months after (OPPELT and TOMILIN) had
24  acquired it, and 2 months after the defense had requested it, pursuant to P.C. 1054
25  criminal discovery stipulations).  Furthermore, Defendant OPPELT turned it over
26  **only 2 days prior to PLAINTIFF's scheduled Preliminary Hearing**, wherein the
27  (ruling) Magistrate Judge had already ordered that "no more extensions or
28  continuances would be permitted".  OPPELT had (for two months) illegally defied

1   PLAINTIFF's defense attorney (William Moore, Esq., Managing Partner of the

2   Beverly Hills specialty firm Moore, Sorensen & Horner), in addition to PLAINTIFF

3   himself, who had personally asked OPPELT twice for such copy. Therefore,

4   OPPELT's blatant defiance and prejudicial motives (were not only rude), but forced

5   PLAINTIFF (and his criminal defense attorney) to throw themselves at the mercy of

6   that Court, by begging the Judge for one more continuance, so that PLAINTIFF

7   (and his defense team) could properly analyze, authenticate, and retain the

8   computer/video/lip analyzing experts necessary in order to prepare an adequate

9   defense to PLAINTIFF's illegal 1/14/06 seizure.

10       75. Furthermore, very crucial sections of the DVD videotape were

11   unquestionably truncated– exculpatory sections of video evidence that negated and

12   impeached the false allegations purported by DEFENDANTS DUNSTER,

13   FILLMORE, OPPELT, and TOMILIN within PLAINTIFF's arrest report.  In

14   addition [and in typical LAPD HWD DIV fashion], there were sections notably

15   missing which corroborated PLAINTIFF's rendition of events.  PLAINTIFF was

16   therefore (once again) required to retain (even more) computer experts in order to

17   independently access the restaurant's (security camera) back up servers, for the

18   purposes of retrieving and/or analyzing such exculpatory evidence – evidence

19   deliberately and maliciously (at least intended to be) destroyed by such LAPD

20   DEFENDANTS.

### *LAPD Destruction of January 14, 2006 Use of Force Investigatory Audiotapes*

23       76. Defendants DUNSTER, FILLMORE, TORRES, TOMILIN, and OPPELT

24   (either intentionally, or by way of their acquiescence and/or negligence) illegally

25   destroyed and/or tampered with evidence (relating to PLAINTIFF's pending 1/14/06

26   Use of Force Investigation).

77. LAPD rules and procedure mandate that supervisors conducting a Use of Force Investigation (TOMILIN) record (via audio tape) witness statements.  Each of the supposed 16 percipient witnesses (located within PLAINTIFF's 1/14/06 arrest report) were interviewed on tape.  Many of those (witness) statements were twisted by the interviewing sergeant (TOMILIN), spun to the detriment of PLAINTIFF (and for the benefit of corroborating the false statements/tales of PLAINTIFF'S arresting officers (DUNSTER AND FILLMORE)).  Furthermore, such civilian witnesses have admitted NEVER making such statements (against PLAINTIFF) which found themselves within PLAINTIFF's January 14, 2006 DUNSTER/FILLMORE/TOMILIN/OPPELT - prepared arrest report – scathing and venomous statements ALL directed towards the detriment of PLAINTIFF (the criminal defendant), and which ALL corroborate (and "back up") the HWD DIV arresting officers' (DUNSTER and FILLMORE) "creative" rendition of events.  However, when (several of the) witnesses were eventually contacted and interviewed by PLAINTIFF's private investigators, each witness (without exception) specifically remembered providing (the interviewing LAPD HWD Supervisory Defendant Sgt.) statements backing up PLAINTIFF, and providing information that corroborated PLAINTIFF's rendition – that PLAINTIFF was attacked and beaten by the officers.  When PLAINTIFF had (previously) subpoenaed these audiotapes, audiotapes that would invariably capture the genuine "flavor" verbatim of the (witness interviews), the LAPD "Supervisory " Defendants TOMILIN, TORRES, and OPPELT claimed that the tapes had been "lost" and/or "destroyed".

78. Despite DEFENDANTS' repeated denials that such audiotapes do not (nor have ever existed), several (of such) audiotapes have been located and acquired by investigators working for PLAINTIFF.  Such footage clearly demonstrates TOMILIN strategically bait the witnesses into providing misleading and false information (against PLAINTIFF).  Despite the witnesses' unequivocal denials of

1  such (anti-PLAINTIFF propaganda), such propaganda nevertheless was improperly

2  and falsely attributed [to that witness] within PLAINTIFF's fictionalized January

3  14, 2006 arrest report.

4

5

6  ### *LAPD Subornation of Perjury and Witness Tampering*

7  79. In further perpetuation of their unscrupulous, self-serving, and

8  "Machiavellian" crusade towards PLAINTIFF's criminal conviction,

9  DEFENDANTS OPPELT, TORRES, and TOMILIN have attempted to cajole,

10  intimidate, and harass several January 14, 2006 percipient civilian witnesses into

11  (also) joining [the HWD DIV's] fraud by manufacturing evidence designed to

12  malign and denigrate PLAINTIFF, in the form providing perjured testimony

13  (against PLAINTIFF) at PLAINTIFF's (originally scheduled February 17, 2006)

14  Preliminary Hearing.   Such fraud was in perpetuation of the ridiculous HWD DIV's

15  attempt to corroborate the false, concocted, and scripted allegations manufactured

16  by PLAINTIFF's arresting officers (DUNSTER and FILLMORE).

17  80. Defendants TOMILIN and OPPELT continued to annoy, harass, and vex

18  witnesses; including visiting one such witness (both) at work and at home – and on

19  one such occasion, inappropriately left their business cards (alarmingly late one

20  night) at the doorstep of (that witness') mother's home residence.

21

22

23  ### *Defendant DUNSTER Stalks PLAINTIFF (Not Once) but Twice!!!*

24  81. At approximately 5:50 p.m. on Monday, February 20, 2006 Defendant

25  DUNSTER spotted PLAINTIFF walking down PLAINTIFF'S street, while

26  DUNSTER was driving his squad car, and in uniform.   DUNSTER lurked slowly

27  for half the block, apparently for the purpose of instigating PLAINTIFF into some

28  sort of verbal and/or physical confrontation (and potentially an additional (but

1  equally as bogus) P.C. 243 "Battery on a Police Officer, With Injury" arrest).  Upon

2  the positive verification of DUNSTER's identity (behind the slowly lurking LAPD

3  vehicle), PLAINTIFF immediately called for 911 Emergency Assistance, which

4  then forwarded the call to the LAPD Internal Affairs Division.  Upon LAPD

5  (Internal Affairs) Sgt. Dave Singer's specific instructions, PLAINTIFF phoned the

6  HOLLYWOOD DIVISION Watch Commander's Office, where (ironically but

7  sadly) Defendant TORRES got on the phone and barked:   **"Stop calling here, take**

8  **your  problems to Internal Affairs!"**  TORRES then hung up without any further

9  communication, without giving PLAINTIFF the opportunity to explain that he was

10  actually following the very instructions of the LAPD Internal Affairs Division –

11  which was to contact the (HWD DIV) Watch Commander, in order to document and

12  complain about DUNSTER's dangerous and harassing behavior.

13  **Note:** Defendant TORRES was specifically aware (at that time) that he was already

14  a target of several LAPD Internal Affairs Investigations, previously generated by

15  PLAINTIFF (and JANE DOE), and specifically pertaining to the conscious-

16  shocking and abhorrent treatment which JANE DOE endured at the filthy and soiled

   hands of the aforementioned Defendant LAPD HOLLYWOOD DIVISION officers,

17  which occurred during her false arrest and unlawful detention on February 28, 2005.

18  TORRES was the HWD DIV Supervising Watch Commander on duty that night,

   when PLAINTIFF's wife (JANE DOE) was sexually assaulted in a HOLLYWOOD

19  DIVISION stationhouse bathroom, by PLAINTIFF's arresting (January 14, 2006)

20  officer, Defendant KURT JIMMY FILLMORE. Many members of the LAPD HWD

   DIVISION have outwardly admitted their intense and vehement hatred for

21  PLAINTIFF (and his wife) for initiating several LAPD Internal Affairs

22  investigations into their illegality/criminality surrounding false arrests and

23  abusive/sickening (in-custody) treatment previously inflicted on (both) PLAINTIFF

   and his wife, by some of the (same HWD DIV arresting) officers.  In fact, DDA

24  Vodnoy specifically admitted to PLAINTIFF's (former) privately-retained attorney

25  during a November 9, 2006 (attempted) disposition/settlement meeting, without

   PLAINTIFF being present) that the HWD DIV officers "all knew who PLAINTIFF

26  was", they held a (high) level of animosity towards PLAINTIFF, and (in an attempt

27  to convince PLAINTIFF's attorney to advise PLANTIFF to please the HWD DIV

   officers by pleading "Guilty") stated that (such officers) would apparently be

28  looking and "gunning" for PLAINTIFF (in the street), should PLAINTIFF in fact

reject such prosecution offer by exercising his 5th, 6th, and 14th Amendment rights to "take the case to trial". DDA Vodnoy further explained that the (HWD DIV) hatred (of PLAINTIFF) stemmed from the multiple Internal Affairs investigations PLAINTIFF (and his wife had generated (along with the accompanying internal scrutiny, in addition to the fact that PLAINTIFF had successfully convinced L.A. Superior Court Division 119 Judge George G. Lomeli to issue body attachments/bench warrants for (the officers') arrests, after such HWD DIV officers illegally blew off PLAINTIFF's properly-issued subpoenas (on multiple occasions). The HWD DIV officers could not fathom that a "pro per" criminal defendant (PLAINTIFF) had the gall and nerve to subject them (actual police officers) to "arrest warrants", and drag them into court as early as 8:30 am, sometimes forced to sit around for hours needlessly, exhausted and tired (having just gotten off duty and after working all night (in Hollywood) during the "graveyard shift"); notwithstanding however that they were being compensated (double) their normal salaries/rates(from information and belief), due to (such mandated) court appearances occurring during their "overtime" periods.

## *Defendant DUNSTER Stalks PLAINTIFF (and his Family) AGAIN!*

82. Still unfinished in his prodding and instigating/provoking tactics, DUNSTER performed (virtually) the same act of stalking and intimidation (aimed at PLAINTIFF) on October 12, 2006. Such occurred when PLAINTIFF's group (which also included his wife JANE DOE) were spotted by DUNSTER, who again lurked behind them, while once again in uniform, and while driving his black and white patrol vehicle. In similar fashion to the February 20, 2006 incident, PLAINTIFF once again was forced to seek the aid of LAPD 911 Emergency Assistance, reaching once again the California Highway Patrol Dispatch Center which eventually (also) forwarded such call to the HOLLYWOOD DIVISION Watch Commander's Office. Upon connection, someone sarcastically provided PLAINTIFF with the phony "shucking and ducking" belief (accompanied with an immediate invitation down to the station) that he was purportedly making the appropriate and official steps towards initiating another Internal Affairs Complaint

against DUNSTER.

83. Faked and misled into thinking such, Defendant JERRETT (who was Watch Commander for the evening, and in corresponding and increasingly sarcastic form) refused to write down PLAINTIFF'S contact information, witness info, etc. Defendant JERRETT refused to accept any evidence which corroborated PLAINTIFF's allegations and facts surrounding the multiple DUNSTER stalking episodes. JERRETT also refused to acknowledge a copy of the video (of that instant October 12, 2006 stalking episode), captured that very same day, in real time, and by PLAINTIFF's hotel's security cameras.

84. Instead JERRETT became increasingly rude and antagonistic, and illegally failed to document or forward PLAINTIFF's complaint/allegations to the LAPD Internal Affairs Division – in fact, JERRETT'S pedantic and condescending attitude (in light of the circumstances at the time) created such an antagonistic scenario that eventually escalated to PLAINTIFF having to formally initiate a separate and independent Internal Affairs personnel complaint (and administrative action) against Defendant JERRETT himself, a fact PLAINTIFF (very openly) reiterated to JERRETT's face that very night. As noted, PLAINTIFF vociferously pressed JERRETT as to why JERRETT had directly 'aided and abetted' DUNSTER's illegality by failing to report such documented and repeated foul behavior to the LAPD Internal Affairs Division. JERRETT (verbally) responded with a chuckle and laugh; and turned his back on PLAINTIFF, walking away and towards the Watch Commander's environs.

85. PLAINTIFF's frustration and genuine fear from his physical inability to walk his immediate family peacefully down their own street [without the existence of some potentially lethal "stalking" episode] was in blatant violation of PLAINTIFF's Fourteenth Amendment Rights to Due Process. The fact that the very same LAPD HOLLYWOOD DIVISION officer who had (just a couple of weeks

1   prior) fractured PLAINTIFF's vertebrae in a retaliatory rage (cloaked and disguised

2   in a phony P.C. 243 "Battery on a Police Officer, With Injury" arrest) was lurking

3   behind and inviting/hoping PLAINTIFF to "step out of line", speaks volumes as to

4   PLAINTIFF's January 14, 2006 false arrest, and more specifically to its underlying

5   and nebulous circumstances.   The evidence shows that PLAINTIFF (and his wife

6   JANE DOE) were the ones being "toyed with", harassed, and victimized –

7   PLAINTIFF was NOT the aggressor (as the Defendant LAPD HOLLYWOOD

8   DIVISION officers have falsely purported in their arrest reports and multiple sworn

9   testimonies); but instead a newlywed husband trying to protect his female spouse.

10  Certainly seeing his wife (on January 14, 2006 at Roman's Restaurant) start to

11  hyperventilate, visibly shake, and turn ashen at the sickening sight of Defendant

12  FILLMORE's tongue (which FILLMORE brazenly "air-licked" [in PLAINTIFF's

13  wife's direction], in order to allegedly mimic some vile sex act), falls into such

14  category. As such, this repeated pattern of harassment and abuse pushed

15  PLAINTIFF to what any rational, normal, and (even semi- happily) married

16  individual would do – that is to attempt to put an end to such abuse – NOT in a

17  physical and threatening confrontation, but in a verbal stern warning/admonition.

18

19       86. Defendant DUNSTER has repeatedly taken upon himself to personally

20  initiate such aforementioned harassment, when DUNSTER (acting under color of

21  law) was certainly NOT acting "within his duties" as a sworn LAPD officer.  In

22  response, PLAINTIFF has reached out to the proper LAPD (and other) authorities,

23  and has NOT acted out in some form of violent "Black Panther" inspired vigilante

24  justice movement. Such fact blatantly negates and contradicts PLAINTIFF's

25  arresting LAPD HOLLYWOOD DIVISION officers' fabricated and grossly over-

26  embellished/fictionalized allegations, wherein such officer Defendants have

27  repeatedly (*ad nauseum*) fraudulently accused PLAINTIFF of threatening to *"fuck*

28  *them up"*, or *"bash FILMORE's brains in with a baseball bat"!*

87. In fact, Defendant DUNSTER and FILLMORE's intentional harassment, vexing, predatory, and instigating abuse had become so routine and predictable, that circumstances required PLAINTIFF (and his wife JANE DOE) to seek the legal protection of the Court; as noted, they were granted **Temporary Restraining Orders #BS101824, and #BS101825,** against LAPD officer Defendants DUNSTER and FILLMORE, respectively, put into effect on February 24, 2006, and executed by Los Angeles Superior Court Justice Timothy Murphy. Such Judicial Court Orders strictly forbade (DEFENDANTS DUNSTER and FILLMORE) from coming any closer than 100 yards of PLAINTIFF, PLAINTIFF's family, and/or PLAINTIFF's residence, place of business, etc.

88. PLAINTIFF is informed and believes, and on that basis, alleges that Defendant JERRETT directly aided and abetted DUNSTER's intentional infliction of emotional distress and stalking behavior by adhering to the "code of silence" within the LAPD and LAPD HOLLYWOOD DIVISION, by failing to report such unconstitutional conduct to the LAPD Internal Affairs Division.

89. To this day, PLAINTIFF has NEVER received any correspondence whatsoever, from the LAPD Internal Affairs Division regarding any investigation related to DUNSTER's illegal October 12 2006 conduct.

### *Defendant David TORRES' Fraud – November 8, 2006*

90. Evidence of Defendant TORRES' vehement hatred towards PLAINTIFF and JANE DOE was displayed (by TORRES), specifically on November 8, 2006, in CCB Division 115. At such pre-trial conference hearing, Defendant TORRES attempted to defraud that Court with false and misleading information; specifically designed to malign the strength of his criminal defense.

91. More specifically, TORRES attempted to pave the ground for PLAINTIFF's (already posted) $75,000 bail to be revoked, the intended result being PLAINTIFF remanded to the environs of the Los Angeles County Men's Central Jail indefinitely.

92. In doing such, TORRES sought permission of (then) CCB Division 115 Judge Ruth Ann Kwan to make a long-winded and slanderous (on the record) speech, purporting that PLAINTIFF was supposedly so "threatening, intimidating" , and such an ominous posit of fear for ALL of the LAPD HWD DIV patrol officers, that [in the furtherance of justice and also in the best interest of public safety, it was therefore essential and mandated that PLAINTIFF be remanded to jail custody forthwith.

93. TORRES even took it to another level when he carelessly identified a specific day of the week that PLAINTIFF had (supposedly) raised his arms PLAINTIFF's arms [at TORRES] , in order to supposedly challenge TORRES to some sort of "duel/street fight".

94. Such aforementioned "challenge" was supposedly issued by PLAINTIFF on the street, while PLAINTIFF was **A FULL 2 blocks away,** and (according to TORRES) standing on a busy Hollywood weekend street corner, in the middle of the day, and allegedly personally witnessed (by TORRES), while TORRES was supposedly driving a "tinted blackened-out windowed" LAPD-issued Sports Utility Vehicle" [truck].

95. PLAINTIFF is informed and believed that [unless TORRES possesses some kind of "Clark Kent-like" X-Ray vision], then such incredulous allegation was (and still is) ridiculous and/or an accurate indication of TORRES' affliction of some form of paranoid schizophrenia.

96. Furthermore, PLAINTIFF was nowhere near the City of Los Angeles on that particular (TORRES-identified) day; for PLAINTIFF has evidence

demonstrating that he was at the San Diego Zoo and Wild Animal Kingdom, etc. As noted, it would have been physically impossible for PLAINTIFF to have been in 2 places at the same exact time.

97. Therefore, such malfeasance was/is another example of TORRES' (and several other supervising Sgt. HWD DIVISION Watch Commanders) transparent and feeble attempt to malign (and sabotage )PLAINTIFF'S defense within the related and intertwined criminal matter; by fabricating evidence in order to justify PLAINTIFF's false January 14, 2006 warrantless and illegal seizure.

### *LAPD HWD DIV Supervisors Watch PLAINTIFF'STrial Get Stayed – Dismissed*

98. PLAINTIFF's scheduled commencement of trial (pursuant to his January 14, 2006 P.C. 69 "Resisting Arrest" charges) was initially scheduled for November 29, 2006 in CCB Division 115, the Honorable Judge Ruth Ann Kwan presiding.  On November 27, 2006, PLAINTIFF filed a "Petition for Writ of Mandate/Prohibition and Request for Immediate Stay of his Jury Trial".  On November 28, 2006, the Court of Appeal (Second District, Division Three) granted PLAINTIFF's request by staying **ALL** proceedings, pending the (Appellate) Court's determination of the within petition.

99. On the morning of November 29, 2006 however, Judge Kwan [in vehement on- the- record disagreement with the Court of Appeal's November 28, 2006 (stay) ORDER] angrily disregarded (the Appellate Court) and illegally called PLAINTIFF's case for trial.  In the process, Judge Kwan immediately ordered the forfeiture of PLAINTIFF's (already posted) $75,000 bail, and issued a grossly illegal $250,000 bench warrant for PLAINTIFF's arrest.

100. LAPD HOLLYWOOD DIVISION officer Defendants JERRETT, TOMILIN, TORRES, DUNSTER, and FILLMORE, all aware of the "stay" issued by the Court of Appeal, and (more importantly) aware of the impropriety of

PLAINTIFF's "warrant", plotted in concert and collusion with (then prosecuting) Los Angeles County deputy district attorney Matthew M. Vodnoy; and ALL strategized PLAINTIFF's illegal apprehension.

**Note:** DDA Vodnoy had since been removed from PLAINTIFF's criminal case as prosecuting deputy district attorney, due to PLAINTIFF's identification and uncovering of Vodnoy's prosecutorial misconduct, fraud, and destruction of evidence, in blatant violation of *Brady v. Maryland*, 373 U.S. 83 (1963). DDA Vodnoy's prosecutorial malfeasance not only got him recused from PLAINTIFF's criminal matter in February 2007, but his fraud also paved the way for his dismissal/ejection from the plush environs of the LA County District Attorney's Office's Central Headquarters; where he was relegated to a separate and satellite Juvenile Division, where he is currently (from information and belief) tasked with prosecuting adolescent teenagers who show up late to Algebra class in "Truancy Court".

101. During the early weeks of December 2006, and in further violation of PLAINTIFF's Fourth and Fourteenth amendment rights, Defendants FILLMORE, JERRETT, and TORRES conspired to "nail" PLAINTIFF specifically on his approaching birthday (December 20), and also to specifically utilize the "under the table" services of the excessively brutal [and officially banished by the LAPD] "***Hat Squad Warrant and Fugitive Unit***".

102. PLAINTIFF has evidence that such "Hat Squad" Unit consisted of the [most abusive] LAPD officers who were authorized and instructed to go about their daily rituals with the notion that the inherent "rights" of criminals could be dealt with through "broken bones and split lips". From information and belief, the LAPD "Hat Squad" historically discouraged visiting "gangsters" by meeting them at the airport, escorting them to an isolated room/office, and beating them senseless. According to current sources within the Los Angeles Police Department, the LAPD "Hat Squad" Officers were/are so feared that one such officer stated (when interviewed) that "when we'd announce such-and-such a case had been turned over

to the Hat Squad[just as PLAINTIFF's had been within this instant action], many of the suspects in those cases would voluntarily give themselves up."  Such was the excessive level of physical brutality and abuse that this specialized and violent unit inflicted (and continues to inflict) on their "warranted arrestees".

### *Plaintiff's Gets Taken Down by the"Hat Squad" on his Birthday – 12/20/06*

103. On December 20, 2006, while joyously celebrating (both) his birthday and the (anticipated) arrival of his first born child, the LAPD ["Illegal-Warrant"] HOLLYWOOD DIVISION "HAT SQUAD" officer Defendants ambushed PLAINTIFF at his dinner table; they tackled PLAINTIFF out of his chair, and (self admittedly) almost shot PLAINTIFF dead – pursuant to the authorization and approval of ("in command" Supervisory Sgt.) Defendants JERRETT and  HOOPES; who BOTH gave the green light to use "lethal force".

104. During such ambush, Defendant HORTON (with her gun drawn and pointed at PLAINTIFF's head) ripped a biscuit out of PLAINTIFF's mouth, and threw it to the ground.

105. During such ambush, Defendant GREEN ripped PLAINTIFF's red and white Santa Clause hat (of indeterminate sentimental value) off of PLAINTIFF's head and also threw it to the ground.  PLAINTIFF has never been able to recover such Santa Claus hat.  The same can be said for PLAINTIFF's black Calvin Klein overcoat, and other sartorial items of substantial monetary and sentimental value.

106. PLAINTIFF's "birthday gift" [in the form of LAPD "Hat Squad" ambush] was laced with such high levels of excessive force and violence [in direct violation of the Fourth and Fourteenth amendments], that PLAINTIFF was (once again) sent to the Emergency Room [this time to LAC+USC Medical Center] with a (further) damaged vertebrae and concussion.  Defendants GREEN, HORTON,

1   JERRETT, and PADILLA jammed their knees, elbows, and fists into PLAINTIFF's

2   neck and back [already traumatized from their "brothers and sisters' (DUNSTER's,

3   FILLMORE's, MURTHA's, and HAWKINS-YU's) previous January 14, 2006

4   attack] ; and kicked PLAINTIFF as PLAINTIFF attempted to curl into a ball and

5   shield himself from such onslaught of LAPD HOLLYWOOD DIVISION

6   aggression.   Defendants HORTON and GREEN (even after PLAINTIFF had been

7   handcuffed, once again tied up PLAINTIFF's legs and ankles with a rope [like a

8   disobedient slave on a nineteenth century Alabama cotton plantation].

9        107. During such violent seizure, Defendant PADILLA treacherously hoisted

10   PLAINTIFF's visibly pregnant wife (JANE DOE) up out of her chair by her hair,

11   threw her against the restaurant window, and barked:  ***"Shut the Fuck Up, You***

12   ***Stupid Bitch, or I'll Knock Your Ass Out and Arrest You!!"***

13        This particular interchange (with accompanying PADILLA-proffered edict)

14   occurred as PLAINTIFF's wife was in the process of (literally) showing Defendants

15   JERRETT, GREEN, HORTON, and PADILLA proof that PLAINTIFF's purported

16   bench warrant was improper, invalid, "illegally issued, and "void"; in addition to

17   simultaneously attempting to gather cash monies off the ground that had fallen out

18   of PLAINTIFF's pockets as he was getting tackled by his HWD DIV officer

19   Defendants.

20

21   ***Jerry PADILLA (LAPD Shield # 30790) – Captain of the HWD DIV "Hat Squad"***

22        108. Results of extensive investigations have revealed that this Defendant

23   PADILLA was (and sadly continues to be) the "Captain" of the LAPD HWD DIV

24   "Hat Squad". PADILLA is the (even self-admitted) "poster boy" of LAPD excessive

25   force personnel complaints; for he is (proudly, and very recently) the personal target

26   of  (**no less than eleven)** pending and open LAPD Professional Standard

27   Bureau/Internal Affairs investigations for physically abusing his arrestees – some

28   individuals who were NEVER even arrested, but just harassed and terrorized by

-41-

1  him.

2  Defendant PADILLA is legendary and well-known [not only within the HWD
3  DIV, but also throughout the entire LAPD], for often sending his
4  arrestees/complainants (both male and female) to the hospital with fractured bones,
5  head trauma, and "unexplained" contusions.  One such example can be found within
6  LAPD Internal Affairs Complaint # CF No. 07-001942; wherein "Captain"
7  PADILLA physically reached into an automobile, and hoisted the complainant out o
8  such vehicle [nonetheless a law-abiding, never-been-arrested, California-State-Bar-
9  Association-Dues-Paying Licensed Attorney] and slammed him face-first into a
10  wall.  In addition (and not surprisingly) PADILLA also barked his "signature"
11  command: **"Shut the Fuck Up, or I'll Knock Your Ass Out and Arrest You!!!"**
12  - this time, however, PADILLA understandably omitted the **"You Stupid Bitch"**
13  reference, due to the fact that such victim was/is male, as opposed to PLAINTIFF's
14  wife, who was/is not].  The results of such (above-described) interchange included
15  (such complaining witness) to be forced to be admitted to the Emergency Room
16  with a fractured wrist; an (equally nauseating) excessive force-laced [color of law
17  abuse] which was even further inexcusable in light of the fact that (such victim) was
18  guilty of no crime, and immediately released, and facing NO CHARGES
19  whatsoever.

20  Nonetheless, however, such abhorrent assault was likewise condoned by the
21  LAPD Internal Affairs Division, which ruled (such ridiculous display of excessive
22  force) as "*unable to adjudicate*" , and further deeming PADILLA's actions as
23  "*justified*".

24  PLAINTIFF alleges and believes that as a direct and proximate result of the
25  unlawful, false, intentional, wrongful, malicious, and willful December 20, 2006
26  acts [of Defendant PADILLA], when PADILLA slammed PLAINTIFF's pregnant
27  wife against the Roman's Restaurant window, PLAINTIFF's unborn child was
28  injured [to the point of having to endure a "high risk" gestation and pregnancy term,

1  followed by a (four weeks premature) July 3, 2007 Emergency, two-o'clock in the

2  morning, excruciatingly painful and potentially lethal (to both mother and child)

3  Caesarian Section Delivery, occurring at the Neo-Natal Intensive Care Unit at

4  Cedars Sinai Medical Center.]

5        In fact, [due to Defendant PADILLA's rampant malfeasance and abuse], he

6  has been "red-flagged" by the LAPD Command Staff; and consequently any

7  potential for (his) promotion "up the LAPD ranks" has been truncated and

8  eliminated.  As noted, Defendant PADILLA has been "locked into" the

9  (rudimentary and relatively novice) rank of LAPD "**Police Officer II**" – a rank he

10  shares with (just promoted) rookies in their twenties [despite the fact that Defendant

11  PADILLA is significantly into his forties, and has been on the LAPD force for

12  (close to) 15 years].

13

14  **Note:**  PLAINTIFF very much looks forward to Defendant PADILLA's sworn
deposition to ascertain the precise chronology of the edict which Defendant
15  PADILLA proffered to PLAINTIFF's wife (JANE DOE) during PLAINTIFF's
16  illegal December 20, 2006 "Hat Squad" seizure.  More specifically, was PADILLA
intending on "knocking out" (the very visibly pregnant) JANE DOE unconscious,
17  then handcuff her and take her into custody?; or (in the alternative) was he intending
18  on physically seizing her, then handcuffing her (after he slammed her against the
restaurant window), and then (at that time) knock "her ass out" cold?, if she didn't
19  "shut the fuck up, you stupid bitch???"  Only time will tell, because (not only from
20  just "information and belief", but also from hard, cold, non-hearsay-type evidence),
21  Defendant PADILLA has **never** denied his personal participation in such "verbal
interchange", for he has proudly and callously boasted about it.
22

23        109. As PLAINTIFF was screaming out in pain and pleading with Defendants

24  GREEN, HORTON, JERRETT, and PADILLA to stop kicking and slamming his

25  back, PLAINTIFF's wife continued (for at least 30 minutes) to insist (and

26  practically beg the HOLLYWOOD DIVISION officer Defendants to call an

27  ambulance and get PLAINTIFF to a hospital.  Defendants JERRETT, PADILLA,

28  HORTON, and GREEN deliberately and intentionally refused to call an ambulance,

for they intentionally disregarded any (and all) requests to render medical aid to PLAINTIFF, who was visibly and vociferously screaming out in pain on the ground. Defendants PADILLA, HORTON, JERRETT, GREEN, and FILLMORE [who had ventured to the scene in order to gloat, smirk, and celebrate his (FILLMORE's) successful orchestration of PLAINTIFF's December 20, 2006 "Hat Squad" seizure], did not render medical aid to PLAINTIFF, but instead mocked and taunted PLAINTIFF with such labels as "bitch-ass faggot" and/or "faking prick", etc.

110. It was not until such LAPD HOLLYWOOD DIVISION officer Defendants were physically unable to move PLAINTIFF off of the ground, coupled with the protests of several percipient by-standers [who had witnessed PLAINTIFF's ambush and who were voicing their concerns at the HWD DIV "Hat Squad troop" by insisting that the officers call an ambulance] did such officer Defendants finally summon for an Los Angeles Fire Department ambulance, ___a full hour after PLAINTIFF was initially picked up out of his chair and slammed to the ground.___ Additionally, at the parking lot of LAC+USC Medical Center, Defendants PADILLA and JERRETT (when noticing that there were no visible surveillance cameras around to capture their abusive and malicious displays of excessive force and violence) slammed the door (of JERRETT's LAPD-issued squad car) on the top of PLAINTIFF's head, when PLAINTIFF was taking too long to enter the car. Apparently, JERRETT and PADILLA thought that it was a simple task for PLAINTIFF (while suffering from a misaligned vertebrae, in addition to being under the dizzying influence of several mind-altering narcotics) to simply remove himself (at a second's notice) out of a hospital wheel chair [which was used to transport PLAINTIFF from the Emergency Room to the parking lot], and into an awaiting LAPD squad car (all while both wrists and ankles are shackled with chains). Adding to such excessive displays of physical abuse and abhorrent levels of force, PADILLA practically suffocated PLAINTIFF with some sort of clear-

plastic cellophane "grocery bag"; in the futile (and unsuccessful) attempt to muzzle PLAINTIFF, as PLAINTIFF was yelping and screaming out in pain.

111. PLAINTIFF has specific indisputable evidence that the HOLLYWOOD DIVISION officer Defendants [executing the illegal warrant], including Defendants JERRETT, PADILLA, and FILLMORE] were specifically aware of the (December 20, 2006 executed) warrant's invalidity/illegality, prior to its (even more illegal) "Hat Squad" execution.

112.   Following such "execution", and well after PLAINTIFF had been immobilized and transported (via LAFD ambulance) to the Emergency Room of LAC+USC Medical Center, Defendants JERRETT and PADILLA illegally seized and searched JANE DOE's bag (without her permission and/or consent). Furthermore, Defendant JERRETT illegally removed several of JANE DOE's items from her bag, [including privileged and "work product" documents (not surprisingly with Defendant JERRETT's own name already on them].

113. Defendant JERRETT never provided PLAINTIFF's wife with a property receipt (identifying and listing such confiscated items), nor were any of the items documented on PLAINTIFF's property log, supposedly located within PLAINTIFF's arrest report package.

114. After such illegal confiscation and "theft", and in response to PLAINTIFF's wife's vehement protests of JERRETT and PADILLA's fraudulent acts (of removing such aforementioned property items), Defendant "Hat Squad Captain" PADILLA threatened PLAINTIFF's wife (again) with arrest.  Defendant PADILLA did not permit PLAINTIFF's wife to drive her car away from Roman's restaurant, for he told her that "he would personally arrest her" if she did so.  As ordered (though illegally), PLAINTIFF's wife was forced to be driven away by an acquaintance, whom she had summoned to the restaurant.

115.   Later that evening, PLAINTIFF's wife called the Defendant

HOLLYWOOD DIVISION in order to post PLAINTIFF's bail, in addition to attempt to ascertain PLAINTIFF's physical location [and more specifically to which hospital he was taken by LAFD ambulance].   During such ridiculous telephonic session, JANE DOE was placed "on hold" for many minutes; the HWD DIV phone receiver seemingly passed around by several HWD DIV officers [who sarcastically purported as if they were attempting to locate PLAINTIFF]; and finally in the vile and malicious attempt to turn (PLAINTIFF's illegal seizure) into some kind of joke, some HWD DIV rogue (trying to be a comedian) finally got on the phone and told PLAINTIFF's wife (JANE DOE) that her husband [PLAINTIFF] was "brain dead", having "unfortunately suffered a seizure/stroke"[ while in the ambulance on the way down to the hospital], and was "in a coma".

One can only imagine the turmoil [for PLAINTIFF's family] that this horrific LAPD HOLLYWOOD DIVISION "individual" caused (in falsely conveying such information), while working as a LAPD officer, and under the "color of law" authority which he so egregiously abused.

In addition, Defendants JERRETT and PADILLA also misled PLAINTIFF (while still at LAC+USC Medical Center) by falsely purporting that PLAINTIFF's wife [JANE DOE] had (again) been arrested and taken into custody; and (in the usually expressive words of Defendant PADILLA) "chained to a bench at the Wilcox (HWD DIV) station".   Such slander, however, was also false, and intended only to annoy, intimidate, vex, and harass PLAINTIFF [who at the time was shackled to a hospital gurney and flapping around in excruciating pain].

### Plaintiff's THIRD Fictionalized and Manufactured Arrest Report (12/20/06)

116. Defendants HORTON, GREEN, SANCHEZ, KLEE, JERRETT, HOOPES, BRANDSTETTER, and CONBOY conspired to formulate a sloppy and mistake-plagued 12/20/06 arrest report.  Aware of the fact that PLAINTIFF's

alleged warrant was illegal and invalid [and also aware of the fact that

PLAINTIFF's release was imminent (due to either a bail deviation O.R. release

and/or successful "Habeas Corpus" Motion], such officer Defendants overtly

conspired together to charge PLAINTIFF with felony P.C. 69 "Resisting Arrest" [on

top of and in excess of the illegal warrant]. In addition, they falsely charged

PLAINTIFF with P.C. 422, "Making a Criminal Threat".

117. PLAINTIFF was supposedly accused of making such thinly-veiled and

equivocal "threat" at LAC+USC Medical Center, with all four of his extremities

shackled to a gurney; after PLAINTIFF had been administered significant and

potent dosages of the pain neutralizing, but mind-altering narcotics: *Toradol,*

*Flexeril, Valium,* and *Vicoden* - not just orally, but also

intravenously. see *in re Sixto* (1989) 48 Cal.3d 1247, 1257-1262 [259

Cal.Rptr.491,774P.2d 164]

**Note:** Following PLAINTIFF's receipt/injection of this medication (shot directly
into his veins, but certainly not before, PLAINTIFF was also accused (by these
same LAPD HWD DIVISION officers) of allegedly hurling some homosexual
intentions/desires (and derogatory racial slurs) towards Defendant JERRETT –
strangely ironic and particularly far-fetched, since PLAINTIFF is NOT gay, has
NEVER exhibited/nor exercised any homo/bisexual desires (or actions) towards any
individual, and who is (very happily) married **TO A FEMALE**. Even more
unbelievable are the derogatory racial slurs/profanity which PLAINTIFF is accused
of – apparently Defendants KLEE and SANCHEZ [the 2 LAPD HWD DIVISION
Defendant officers who haphazardly composed such P.C. 422 "Criminal Threats"
section of PLAINTIFF's 12/20/06 arrest report] forgot (or failed to notice) that
Defendant JERRETT and PLAINTIFF are **BOTH** of the same (African-American)
race; it would therefore seem unfathomable and virtually impossible for anyone
(even a semi-educated individual) to possibly believe that PLAINTIFF would [in his
right (non-narcotic induced) mindset] call anyone a **"NIGGER"** – as he is accused
of doing, by the LAPD HOLLYWOOD DIVISION Defendants.

118. The evidence shows that LAPD HOLLYWOOD DIVISION

(Supervising Sgt.) Defendant JERRETT instructed his HWD DIVISION officers to

strategically twist PLAINTIFF's words in order to manufacture and concoct a December 20, 2006 Felony P.C. 422 "Criminal Threat" charge.  Upon reading PLAINTIFF's December 20, 2006 arrest report [concerning this alleged P.C. 422 "Criminal Threat", and after comparing its content with the April 2007 preliminary hearing testimony (of Hollywood Division's Officers Fillmore and Green, **also best friends)**], it is apparent that these officers are unable to "keep their stories straight". The officer Defendant(s) authoring such report [HORTON, GREEN, SANCHEZ, KLEE, and/or JERRETT] were apparently provided a copy of PLAINTIFF's corresponding January 14, 2006 arrest report in order to create an aura of consistency.  It is distinctly obvious that the authors simply (in a thinly-veiled attempt at corroboration) "copy and pasted" the verbatim words (supposedly used by PLAINTIFF) during his January 14, 2006 illegal HWD DIV seizure, and placed them into his December 20, 2006 arrest report.

### HOLLYWOOD DIVISION (via CONBOY) Jacks Up PLAINTIFF's Bail [Again]!

120. Defendants CONBOY, HOOPES, and JERRETT punitively and illegally elevated PLAINTIFF's bail to the ridiculous figure of $1,500,000; specifically in order that PLAINTIFF remained falsely incarcerated and jailed at the Twin Towers Correctional Facility on his birthday (December 20, 2006); and throughout the additional and subsequent holidays of Christmas Eve, Christmas Day, New Years Eve, and New Years Day.

121. Defendant JERRETT orchestrated such blatant Eighth Amendment violation ONLY after PLAINTIFF had expressed his vehement desire to post his $250,000 bail immediately, and at LAC+USC Medical Center.  Defendants JERRETT and PADILLA had already illegally removed documents and paperwork from PLAINTIFF's wife's bag; one of which was a bank statement showing a cash balance (in PLAINTIFF's name) significantly in excess of the original bail figure of

$250,000.  In addition, PLAINTIFF's wife [JANE DOE] had already attempted to post PLAINTIFF's $250,000 bail during that aforementioned abhorrent phone call to the HWD DIV.

PLAINTIFF is informed and believes that Defendant JERRETT [with his conspiring LAPD HWD DIVISION "cohorts", CONBOY and HOOPES] elevated PLAINTIFF's $250,000 bail figure when JERRETT had illegally made himself aware that PLAINTIFF had the physical and fiduciary means to post such (originally at $250,000) bail, and immediately.   Furthermore, Defendant HOOPES placed information within PLAINTIFF's arrest report which he knew was false in order to subject PLAINTIFF to a violating and painful strip search [at the jail division of LAC+USC Medical Center].   When filling out the [Watch Commander's Booking Approval] section of PLAINTIFF's December 20, 2006 arrest report, Defendant HOOPES checked the box which authorized PLAINTIFF's pre-booking "Strip Search".  Aware of the fact that PLAINTIFF was in excruciating pain (and physically unable to disrobe on his own volition), HOOPES ordered such officers to rip off ALL of PLAINTIFF's clothes [while PLAINTIFF was suffering and writhing on a 13th-Floor LAC+USC Hospital Jail Division Gurney].  In the (arrest report) section explaining the reasons for HOOPES' decision [to authorize such abusive and (pain-inflicting) "strip search"], Defendant HOOPES fraudulently and maliciously stated that PLAINTIFF had been "previously arrested with bogus documents".

PLAINTIFF looks forward to Defendant HOOPES' sworn deposition to ascertain where [on PLAINTIFF's body and/or in which orifice] could PLAINTIFF possibly conceal contraband in the form of "bogus documents".  Furthermore, Defendant HOOPES falsely purported such, because if one were to forensically dissect each and every arrest report pertaining to PLAINTIFF's previous false arrests [and more specifically the property/evidence log sections, which should (if correctly executed) show evidence of such "bogus document"], one would see that

1   there is no evidence whatsoever of such.  Therefore, Defendant HOOPES

2   fraudulently and maliciously fabricated such in order to achieve what he wanted – to

3   have PLAINTIFF's clothes ripped off of him (by 5 separate officers (of both

4   sexes)), who got to be entertained by the butt-naked PLAINTIFF flapping and

5   flipping around like a fish out of water, still with all four of his extremeties strapped

6   to a gurney.

7   **Note**: PLAINTIFF's bail figure of $1,500,000 (put into place by LAPD HWD

8   DIVISION's Defendants CONBOY, HOOPES, and JERRETT) dwarfed bail
    amounts even for Defendants charged with 1st Degree Murder – which usually is set

9   at $1,000,000.  As such, PLAINTIFF's outrageous and inflated bail situation

10  (originally put into motion by the LAPD HWD DIV officer Defendants) paved the
    way for PLAINTIFF to spend a month in painful custody, and shuttled among the L.

11  A. Sheriff Custodial Facilities and Jails, including Parker Center Men's Jail, the

12  Twin Towers' Inmate Reception Center, the Men's Central Jail, the Pitchess
    Detention Center (East) Facility; and the North County Correctional Facility

13  ("*Supermax*").   At the ("East Max") Pitchess Facility, PLAINTIFF was almost

14  murdered due to the fact that he was initially (and incorrectly) placed in a Mexican

15  Holding tank [instead of the proper Black one].  Due to the volatile and dangerous
    "gang influenced" conditions of the LA County Jail System, all Blacks and

16  Mexicans were segregated.  PLAINTIFF was/is a light-skinned Black man, and as

17  such, the LASD Sheriffs inadvertently classified PLAINTIFF as "Puerto Rican",
    and placed him in a Mexican cell.  Fortunately the sheriffs removed PLAINTIFF

18  just in time, when the level of intensity (within the holding tank) spontaneously

19  elevated, once PLAINTIFF's identification as [not Mexican (or Puerto Rican) but

20  Black] became known to his [Mexican] cellmates.

21

22
    ***The Court of Appeal : "PLAINTIFF a Victim of Illegal Restraint"***
23
         122. On December 22, 2006, [intent on proving that his December 20, 2006
24
    LAPD HWD DIV seizure was false, illegal, and generated out of personal bias and
25
    spite], PLAINTIFF filed a "Petition for Writ of Habeas Corpus".  Consequently, on
26
    December 28, 2006, the Court of Appeal [Second District, Division Three] agreed
27
    with PLAINTIFF's assertions/allegations, by granting the Habeas Corpus Writ, and
28

by declaring that PLAINTIFF's November 29, 2006-issued $250,000 bench warrant was **"illegal, void, and issued without authority"**.

123. The Court of Appeal further ruled that PLAINTIFF's **"rights were unmistakably violated"** [by the soiled and filthy hands of the Defendant LAPD HOLLYWOOD DIVISION]; and further stated that PLAINTIFF's **"entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue"**. The Court of Appeal expressed its shock [at PLAINTIFF's abhorrent treatment] by specifically labeling PLAINTIFF a *"victim of illegal restraint"*.


### *PLAINTIFF Suspiciously "Missing" From HWD DIV 12/20/06 Arrest Logs*

124. In further expected LAPD HWD DIV fashion [and upon their knowledge that PLAINTIFF had launched a vigorous and unrelenting assault (both in criminal and civil court) towards exposing their rampant and routine fraud], the HWD DIV officer Defendants destroyed any (and all) evidence of PLAINTIFF's December 20, 2006 illegal seizure, for PLAINTIFF's name (or any record of his arrest whatsoever) presently is missing from ANY of the arrest/booking logs for that date.


### *HWD Perjury – DUNSTER on 4/6/06; FILLMORE and GREEN on 4/19/07*

125. Defendants DUNSTER, FILLMORE, and GREEN committed perjury during their individual sworn testimonies at (both of) PLAINTIFF's Preliminary Hearings; one on April 6, 2006 and the other April 19, 2007.  Such multiple false testimonies were ripe with glaring inconsistencies, which significantly differed from their previous written statements within PLAINTIFF's arrest reports.

126. Furthermore not only do FILLMORE and DUNSTER contradict each other (when presented with an identical question, and pertaining to the identical scenario), but their conflicting testimonies are further disproved by video footage (capturing PLAINTIFF's illegal January 14, 2006 seizure and beating, and its aftermath) - recorded by the restaurant's security cameras.  The existence of such (impeaching) video footage was unbeknownst to DUNSTER and FILLMORE, when making such false written and testimonial (sworn) statements.

127. In fact, Defendant DUNSTER took it to another level [in revealing his fraud] within his January 14, 2006 sworn "Declaration of Probable Cause" which contained statements noticeably inconsistent with **[his own]** written allegations (located within PLAINTIFF's identical January 14, 2006 arrest report), but sloppily pertaining to the same exact (supposed) events.

128. Defendant FILLMORE is no more adept (at his perjury); he testifies (in April 2007) to facts which indisputably contradict his own previous statements, statements which he had provided (on January 14, 2006) to the Emergency Room triage staff at Cedars Sinai Medical Center.   When falsely testifying at PLAINTIFF's April 2007 Preliminary Hearing, and when providing bogus evidence pertaining to PLANTIFF's alleged culpability in supposedly "breaking FILLMORE's neck" (on January 14, 2006), FILLMORE claimed (as previously noted) that he had/has continually suffered (in a perpetual state of pain) - each and every day since PLAINTIFF's January 14, 2006 arrest.   FILLMORE, however, had not anticipated PLAINTIFF to have uncovered facts and circumstances negating and impeaching such false testimony; and more specifically the existence of FILLMORE's [very recent to PLAINTIFF's January 2006 arrest] roll-over, down-the-hilly embankment; roll-over-again, flip-end-over-end, multiple vehicle automobile accident; supposedly following FILLMORE's (solo) exodus from a semi-nude bikini bar/strip club, at 2:00 am in the morning – a substantial (from

1 information and belief) vehicular collision upon which FILLMORE's neck/upper

2 torso region was physically traumatized, and for which Defendant FILLMORE felt

3 the emergency and dire need to seek medical assistance.

4

5

6 ### _Los Angeles Police Department  [Internal Affairs] : A "Joke"!_

7      129. Defendant HARRIS (purportedly an LAPD Internal Affairs

8 "Investigator") finally agreed to meet with PLAINTIFF (and his wife JANE DOE)

9 for a sit-down interview, immediately following PLAINTIFF'S aforementioned

10 LAPD HWD DIVISION January 14, 2006 beating.  It finally took the egregious

11 event of PLAINTIFF's back being fractured for HARRIS to actually schedule such;

12 for Defendant HARRIS had instructed PLAINTIFF [via a phone call to

13 PLAINTIFF's assistant] that the LAPD Internal Affairs Division (and Defendant

14 HARRIS) was NOT interested in meeting PLAINTIFF (in person), but instead

15 would accept PLAINTIFF's "faxed-in" version of events, followed by a phone

16 interview.

17      130. PLAINTIFF is informed and believes that Defendant HARRIS [due to

18 her negligence, coupled with the LAPD's custom, pattern, and practice of not

19 answering, not following up on, and not investigating personnel complaints directed

20 at their officers] was hoping that PLAINTIFF (and JANE DOE) would just

21 "disappear, move back permanently to the East Coast, and simply just go away".

22

23      PLAINTIFF's extensive investigations have revealed that 99% of civilian

24 complainants (besides having their personnel complaints rejected and deemed (by

25 the Internal Affairs Division as _"without merit"_ or _"unable to adjudicate"_) are

26 provided with an identical boilerplate letter stating the following: _"State law_

27 _prohibits the imposition of discipline or other punitive action by the [LAPD] if the_

28

1  *investigation is more than one year old. In addition, State law limits the amount of*
2  *information we can reveal to you about the [LAPD's] investigation."*

3      This is even more of a joke, because some internal investigations (obviously)
4  may require more than one year to complete; facts in a case may surface years later,
5  and those facts may either confirm or discredit the complaint. Plaintiff is informed
6  and believes that imposing a time limit on a police misconduct complaint gives the
7  LAPD officers [involved] a reason to stall the process, either intentionally or
8  unintentionally. In addition, the law also provides a backdoor exit on accountability,
9  when information regarding the findings of the complaint are withheld from the
10  complainant. Ultimately [as is often the situation, and wholeheartedly occurring
11  within this instant action], there is a potential to close the complaint without
12  resolution.  This LAPD Internal Affairs "machine" has made the investigation
13  process (of officer misconduct) such a joke that in year 2007, of the 320 personnel
14  complaints that were filed (alleging misconduct by LAPD officers), **all 320 were**
15  **dismissed and rejected** [by the Internal Affairs Division] as "*unfounded*", or
16  "*without merit*", or containing "*insufficient evidence to adjudicate*".  Even more
17  ridiculous is the fact that these [all-encompassing-entire-LAPD-officer-force-wide –
18  exonerating] statistics have remained unchanged, constant, and seemingly "written
19  in stone" **for the past six years!!!**

20      131.  Within this instant matter, PLAINTIFF'S meeting with Defendant
21  HARRIS occurred in February 2006 at the LAPD Van Nuys Station; a meeting
22  conducted with such sloppiness, negligence, and unprofessionalism, that (from
23  information and belief) an audiotape memorializing such meeting was haphazardly
24  (and suspiciously) "misplaced," or "erased," or "irreparably damaged" [once again
25  depending on who, at the time, was telling the story].

132. Furthermore, PLAINTIFF (even to this day) has NEVER been provided with ANY documentation and/or written communication pertaining to the LAPD's disposition (and result) of such (supposed) Internal Affairs Investigation.

133. Defendant HARRIS (nor any other member of the LAPD Internal Affairs Division) NEVER contacted nor met with ANY of PLAINTIFF's witnesses; and from information and belief, Defendant HARRIS never analyzed any of the evidence supporting PLAINTIFF's allegations.   As a consequence, Defendant HARRIS provided the involved LAPD officer Defendants (including DUNSTER, FILLMORE, HAWKINS-YU, TOMILIN, TORRES, YNIGUEZ, and MURTHA) with the "fluffy catcher's mitt-like safety zone and comfort level," that NONE of their [color of law] malfeasance would EVER be properly investigated.

134. Even more inappropriately, HARRIS appeared to regularly consort in the physical presence of (Robbery-Homicide Division's) Defendant OPPELT.  In fact, (from information and belief) during the evening of January 14, 2006 [the day of PLAINTIFF's illegal warrantless seizure], Defendants HARRIS and OPPELT were in such close proximity that they shared the same cell phone.

135. PLAINTIFF alleges and believes such, due to the fact that Defendant OPPELT answered HARRIS' phone [on January 14, 2006] when JANE DOE attempted to call HARRIS to inform her that PLAINTIFF was in the hospital, due to his most recent (that day's) run in/ambush with the LAPD HOLLYWOOD DIVISION.  PLAINTIFF thought it inappropriate and odd that Defendant HARRIS [purportedly as an LAPD Internal Affairs Investigator, whose job description was to uncover and bring to light LAPD misconduct) was congregating with, consulting with, traveling with, sharing cell-phones with, and perhaps (from information and belief) intimately socializing with] Defendant OPPELT, whose motives were/are to (1) falsely corroborate the fraudulent allegations and statements purported by PLAINTIFF's January 14, 2006 arresting LAPD officer Defendants [DUNSTER

and FILLMORE]; (2) discredit and sabotage PLAINTIFF's credibility within PLAINTIFF's arrest report package; and (3) ensure that PLAINTIFF was found "Guilty" of such bogus charges, and sent to State Prison.

136. On (or about) March 8, 2008, PLAINTIFF received a letter from the Commanding Officer of the LAPD HOLLYWOOD DIVISION [Defendant FARRELL] which (as expected) stated that "*allegations that the officers yanked JANE DOE by her hair, slammed her against a glass wall and removed documents, and failing to return them, were classified as Insufficient Evidence to Adjudicate. This means that the investigation could not be thoroughly or properly investigated without additional information.  Department investigators were unable to interview JANE DOE*".

137. PLAINTIFF is informed and believed that such falsities and misstatement of facts (within such official LAPD letter) were specifically executed in order to condone, promote, and (shield from culpability) any (and all) illegal acts performed by the LAPD HOLLYWOOD DIVISION "*HAT SQUAD*" officer Defendants (on December 20, 2006).

138. For such letter to falsely and incorrectly convey that ["department investigators were unable to interview JANE DOE"] is a farce and miscarriage of justice, because JANE DOE had previously and specifically left ALL avenues of communication (both directly and indirectly), for the purposes of being contacted and interviewed by the LAPD Internal Affairs Investigators at any time.

139. PLAINTIFF is informed [by many other civilian complainants, and joins the rampant belief] that the LAPD Internal Affairs Division is a "joke"; and that any so-called "Personnel Complaint Process" was/is a futile and gallant waste of time, energy, and resources.

# FIRST CLAIM FOR RELIEF
## (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C SECTION 1983)
### FIRST, FOURTH AND FOURTEENTH AMENDMENTS
*"UNREASONABLE SEARCH AND SEIZURE, EXCESSIVE FORCE, FALSE ARREST, FALSE IMPRISONMENT"* -
[AGAINST DEFENDANTS FILLMORE, DUNSTER, TOMILIN, HAWKINS-YU, OPPELT, TORRES, AND MURTHA]
*(JANUARY 14, 2006 Seizure)*

140.  PLAINTIFF hereby incorporates by reference paragraphs 1 through 139 herein, as if set forth in full.

141.  On January 14, 2006, PLAINTIFF was subjected to an unreasonable and excessive use of force by Defendants FILLMORE, DUNSTER, HAWKINS-YU, and MURTHA, all under color of state law, and in violation of PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

142.  Plaintiff was further deprived of rights, privileges, and immunities secured to him by the First, Fourth and Fourteenth Amendments when Defendants FILLMORE, DUNSTER, HAWKINS-YU, AND MURTHA arrested PLAINTIFF without probable cause, without the existence of any warrant, when PLAINTIFF was hurled head first into an iced tea machine, slammed to the ground, and  face smashed into the floor.  In the process, PLAINTIFF was passive and acting within his First Amendment Rights to Free Speech.   Said DEFENDANTS had absolutely no justification to arrest or use any force against PLAINTIFF.

143. PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments when DEFENDANTS subsequently beat PLAINTIFF's body senseless, tied up PLAINTIFF'S legs with a rope, and punitively caused PLAINTIFF's wrists to bleed by abusively tightening PLAINTIFF's handcuffs, for no other reason but to inflict torture onto PLAINTIFF.

144. PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments when PLAINTIFF's vertebrae was fractured by his DEFENDANT officers, causing PLAINTIFF to be sent to the Emergency Room of California General Hospital Center.

145. In committing these egregious acts, DEFENDANTS acted with intentional and deliberate indifference to PLAINTIFF's constitutional rights.

146. Furthermore, the conduct of DEFENDANTS was willful, malicious, intentional, oppressive, reckless and/or were done in willful and callous disregard of the rights, welfare and safety of PLAINTIFF and/or done in reckless disregard of PLAINTIFF's statutory and constitutional rights, as said wrongful conduct was without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter or prevent the recurrence of such excessive uses of force in the future.

## SECOND CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C SECTION 1983)
### FIRST, FOURTH, AND FOURTEENTH AMENDMENTS
### *"FALSE ARREST, UNREASONABLE SEARCH AND SEIZURE, EXCESSIVE FORCE, FALSE IMPRISONMENT"*
[AGAINST DEFENDANTS FILLMORE, TORRES, GREEN, HORTON, PADILLA, JERRETT, KLEE, SANCHEZ, HOOPES, CONBOY, BRANDSTETTER, FARRELL]
### *(DECEMBER 20, 2006 Seizure)*

147. PLAINTIFF hereby incorporates by reference paragraphs 1 through 146 herein, as if set forth in full.

148. On December 20, 2006, PLAINTIFF was subjected to an unreasonable and excessive use of force by Defendants, all under color of state law, and in

violation of PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

149. PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments when HORTON [ gun drawn and pointed at PLAINTIFF's head] ripped a dinner biscuit out of PLAINTIFF's mouth, and threw it to the ground.   All such occurred when HORTON was specifically authorized to use lethal force against PLAINTIFF by shooting him dead.

150. PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments when GREEN ripped off PLAINTIFF's red and white Santa Clause hat (of indeterminate sentimental value) and threw it to the ground.  PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments when Defendants GREEN, HORTON, JERRETT, and PADILLA jammed their knees, elbows, and fists into PLAINTIFF's already traumatized neck and back, and kicked PLAINTIFF as PLAINTIFF attempted to curl into a ball and shield himself from such onslaught of LAPD HOLLYWOOD DIVISION aggression.  PLAINTIFF was (once again) sent to the Emergency Room [this time to LAC+USC Medical Center], with a (further) damaged vertebrae and concussion.

151. PLAINTIFF was further deprived of rights, privileges, and immunities secured to him by the First, Fourth and Fourteenth Amendments when Defendants HORTON and GREEN tied up PLAINTIFF's legs and ankles with a rope.  In the process, PLAINTIFF was passive and acting within his First Amendment Rights to Free Speech.   Said DEFENDANTS had absolutely no justification to use any force against PLAINTIFF.

152. In committing these egregious acts, DEFENDANTS acted with intentional and deliberate indifference to PLAINTIFF's constitutional rights.

153. Further, the conduct of DEFENDANTS was willful, malicious, intentional, oppressive, reckless and/or were done in willful and callous disregard of the rights, welfare and safety of PLAINTIFF's statutory and constitutional rights, as said wrongful conduct was without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter or prevent the recurrence of such excessive uses of force in the future.

## THIRD CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C SECTION 1983) FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS *"MALICIOUS PROSECUTION"* [AGAINST ALL DEFENDANTS]

154. PLAINTIFF incorporates by reference the allegations of paragraphs 1 through 153 above as if fully set forth here.

155. The criminal charges asserted against PLAINTIFF by DEFENDANTS were initiated and asserted in bad faith, with no basis in fact, solely for the purpose of revenge (against PLAINTIFF), and with the knowledge that the only evidence against PLAINTIFF was unlawfully procured and untrue.

156. DEFENDANTS had a duty to refrain from charging PLAINTIFF with crimes under the circumstances alleged. DEFENDANTS knew or should have known that they had such a duty. By charging PLAINTIFF, causing PLAINTIFF to be incarcerated and face trial, Defendants DUNSTER , FILLMORE, HAWKINS, MURTHA, HORTON, GREEN, PADILLA, KLEE, YNIGUEZ, and SANCHEZ, with the cooperation of and ratification by Defendants TORRES, OPPELT, JERRETT, CONBOY, HOOPES, and FARRELL, willfully, recklessly and maliciously abused the process of the legal system intentionally to harm and harass PLAINTIFF.

157. In the process, DEFENDANTS suborned perjury, manufactured evidence, destroyed evidence, harassed and intimidated witnesses, and committed blatant perjury in order to maliciously prosecute PLAINTIFF.

158. As a result of such illegal malicious prosecution, PLAINTIFF suffered (and continues to suffer) damages, in that PLAINTIFF was arrested (on three occasions), incarcerated for an elongated period of time (under extremely dangerous and onerous conditions), and PLAINTIFF was (and continues to be) prosecuted without probable cause.

159. Furthermore, DEFENDANTS' conspiracy to suppress evidence, commit perjury, suborn perjury, compose and file multiple arrest reports containing false statements of material facts, etc. are (all) for the purposes of obtaining a false conviction against PLAINTIFF, in violation of PLAINTIFF's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

160. As a direct and legal result of the acts and omissions of DEFENDANTS, PLAINTIFF has suffered bodily injury, humiliation, fear, anxiety, torment, degradation and emotional distress.


### FOURTH CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C SECTION 1983)
### *"CONSPIRACY"*
### [AGAINST ALL DEFENDANTS]

161. PLAINTIFF is informed and alleges that DEFENDANTS, and each of them, did conspire with each of the others, and were at all times relevant herein acting within the purpose, course and scope of their conspiracy, and with the knowledge, permission and consent of their co-conspirators, and co-defendants.

162. PLAINTIFF is informed and believes that such conspiracy was conducted in furtherance of intimidating PLAINTIFF and pressuring PLAINTIFF to curtail and/or drop his Internal Affairs Complaints, etc. against Defendants DUNSTER, FILLMORE, TORRES, YNIGUEZ, and JERRETT. PLAINTIFF is informed and believes that there existed an agreement or understanding between or among DEFENDANTS, who worked in concert to deprive PLAINTIFF of his constitutional right to due process under law and a fair trial, and to be free from unlawful seizure, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as applied to the State. PLAINTIFF alleges that there were multiple commissions of overt acts in furtherance of said conspiracy – a conspiracy whose purpose was/is to obtain a false conviction of PLAINTIFF in criminal court, based on false testimony and fraudulent arrest reports – all in furtherance of an abhorrent malicious prosecution. PLAINTIFF is informed and believes that such acts as Defendant DUNSTER harassing PLAINTIFF (both) at his residence and hotel; as Defendant YNIGUEZ incessantly calling (and threatening) PLAINTIFF at home with arrest, and then following up on that threat, when PLAINTIFF was forcefully and falsely arrested (at gunpoint in his living room, half naked in his boxer shorts). Any (and all) charges were subsequently dismissed against PLAINTIFF, and his arrest was proven to (also) be false and improper.

163. Such acts were conducted AFTER (and only after) PLAINTIFF had initiated administrative and criminal investigations into the illegal (and malicious) conduct of such HWD DIV Defendant officers.

164. That as a direct and proximate result of the Defendants' conspiracy and their acts in furtherance thereof, PLAINTIFF was injured, humiliated, shocked, and damaged; and suffered and continues to suffer shock and injury in an amount to be determined at trial.

165. The conduct of said Defendants was (either) intentional, grossly negligent, malicious, and/or done with reckless disregard for PLAINTIFF's constitutional and statutory rights, thus entitling PLAINTIFF to an award of punitive damages against said individual Defendants.

## FIFTH CLAIM FOR RELIEF
**(FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C SECTION 1985, 1986)**
*"CONSPIRACY"*
[AGAINST ALL DEFENDANTS]

166. Each law enforcement officer Defendant agreed and/or understood and conspired with at least one other police officer defendant to deprive PLAINTIFF of the equal protection of the laws, in violation of 42 U.S.C. 1985(3), based on a racially-motivated bias against PLAINTIFF (who is Black).

167. PLAINTIFF is informed and believes that the governmental entity and/or official capacity DEFENDANTS [CITY, LAPD, LAPD HWD DIV, BRATTON, FARRELL, JERRETT, TORRES, HOOPES, CONBOY, BRANDSTETTER, TOMILIN, OPPELT, YNIGUEZ] could have (but did not) prevent the violations of Section 1985(3).

168. Therefore, any individual LAPD officer Defendant is liable under Section 1985, and any (governmental entity or official capacity) Defendant who had the power, opportunity and/or duty to prevent [but who failed to prevent any violation of Section 1985], is liable to PLAINTIFF under U.S.C. Section 1986.

169. Any governmental entity defendant and any official capacity defendant is liable to PLAINTIFF for all wrongs alleged in this pleading pursuant to *Monell, supra.* This alleged conspiracy is separate from the simple, non-racially-based conspiracy alleged in Count Four, above.

# SIXTH CLAIM FOR RELIEF
## (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)
### *"NEGLIGENT HIRING, TRAINING AND RETENTION"*
[AGAINST ALL ENTITY AND SUPERVISORY DEFENDANTS]

170. PLAINTIFF hereby incorporates by reference paragraphs 1 through 169 herein, as if set forth in full.

171. PLAINTIFF is informed and believes and thereon alleges that on or about May 1, 2005 and for some time prior thereto, Defendants THE CITY OF LOS ANGELES, THE LOS ANGELES POLICE DEPARTMENT, LAPD [HOLLYWOOD DIVISION], BRATTON, FARRELL, TORRES, TOMILIN, JERRETT, HOOPES, CONBOY, YNIGUEZ, BRANDSTETTER, OPPELT, HARRIS ("Supervisory DEFENDANTS") knew or should have known that their employees, including the individual DEFENDANTS, were recklessly indifferent to the personal rights and well being of persons with whom they came into contact, and had a propensity for abusing their authority, and other misconduct.

172. PLAINTIFF is further informed and believes and thereon alleges that [Supervisory] DEFENDANTS negligently hired, retained, supervised and/or failed to discipline the individual DEFENDANTS, despite the fact that it was reasonably foreseeable that these DEFENDANTS were likely to inflict violence and injuries upon persons (such as PLAINTIFF) with whom they were likely to come into contact by virtue of their position as peace officers.

173. PLAINTIFF is further informed and believes that such [Supervisory] DEFENDANTS failed to properly train their employees, including those officers or employees involved in (both) the January 14, 2006 and December 20, 2006 incidents, on matters regarding the use of excessive force, proper arrest procedures,

the proper use of the hobble device, proper police writing procedures, and the constitutional limitations of the authority to arrest or detain.

## SEVENTH CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)
### FOURTEENTH AMENDMENT
### *"NEGLIGENCE/ BREACH OF STATUTORY DUTIES"*
[AGAINST ALL DEFENDANTS]

174. PLAINTIFF re-alleges and re-pleads all of the allegations of paragraphs 1-173 of this Complaint and incorporates the same by reference.

175. The herein-described wrongful conduct of such Supervisory Defendants violated Defendants' constitutionally and statutorily- imposed duties, as set forth in the Fourth and Fourteenth Amendments to the United States Constitution; and including, but not limited to California Penal Code 129 (report required by law). Such occurred when each and every personnel complaint initiated by PLAINTIFF (against officers of the LAPD HOLLYWOOD DIVISION, including but not limited to Defendants FILLMORE, GREEN, HORTON, TORRES, DUNSTER, PADILLA, and JERRETT) was blown off, disregarded, and not investigated.   Such [Supervisory] Defendants were so negligent, and in such breach of their duties, that PLAINTIFF was repeatedly denied (even) an Internal Affairs Interview.

176.  At all relevant times, such Defendants (with Defendant HARRIS at the so-called "lead") had a constitutional, statutory, and public duty, to fully and fairly investigate PLAINTIFF's complaints.  Such (Supervisory) Defendants improperly adopted and condoned the inaccurate, unfounded, and false material statements of fact contained in PLAINTIFF's multiple arrest reports.  PLAINTIFF is informed and believed, and on that basis, alleges that DEFENDANTS directly aided, abetted, and attempted to conceal DEFENDANTS' misconduct and malfeasance by (1)

failing to intervene or stop such conduct, and (2) failing to report such unconstitutional conduct to superiors, and to the LAPD Internal Affairs Division.

177.  DEFENDANTS' wrongful conduct caused PLAINTIFF to suffer physical, mental, and emotional injuries, consequential and compensatory damages, in an amount to be determined at trial.

178.  Further, the conduct of DEFENDANTS' was malicious, intentional, and/or done in reckless disregard of PLAINTIFF's statutory and constitutional rights, as said wrongful conduct was without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter and/or prevent the recurrence of such malfeasance in the future.

179.  As a further proximate result, PLAINTIFF was imprisoned unnecessarily longer than he should have been.

180.  Defendants' actions proximately caused PLAINTIFF to suffer additional harm, including, but not limited to, serious emotional distress.  Moreover, the Defendants knew (or should have known) that their intentional, wrongful, and/or grossly negligent misconduct would cause PLAINTIFF to suffer such harm and damages in an amount to be determined at trial.

181.  Defendants owed a duty of care to all citizens, including PLAINTIFF.  PLAINTIFF alleges that the Supervisory DEFENDANTS breached that duty of care, that the injuries sustained by PLAINTIFF were a foreseeable result of such breach, and that such breach was the direct and legal cause of the damages to PLAINTIFF.

182.  As a direct and legal result of the acts and omissions of the Supervisory DEFENDANTS, PLAINTIFF has sustained the damages alleged herein.

183.  The conduct of said DEFENDANTS was (either) intentional, grossly negligent, malicious, and/or done with reckless disregard of PLAINTIFF's

constitutional and statutory rights, thus entitling PLAINTIFF to an award of punitive damages against said individual defendants.

## EIGHTH CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)
### EIGHTH AMENDMENT
### *"EXCESSIVE BAIL"*
### [AGAINST DEFENDANTS FILLMORE, DUNSTER, GREEN, HORTON, PADILLA, JERRETT, BRANDSTETTER, CONBOY, HOOPES, FARRELL]

184. PLAINTIFF hereby incorporates and re-alleges paragraphs 1 through 183, as though fully set forth herein.

185. PLAINTIFF was further deprived of the rights, privileges, and immunities secured to him by the Eighth Amendment, when Defendants intentionally and punitively elevated PLAINTIFF's bail to the outrageous level of $500,000 on January 14, 2006; and to $1,500,000 on December 20, 2006.

186. As such, DEFENDANTS' wrongful conduct caused PLAINTIFF to suffer physical, mental and emotional injuries; consequential and compensatory damages in an amount to be determined at trial. In addition such acts were conducted without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter or prevent the recurrence of such malfeasance in the future.

187. Furthermore, the conduct of the individual Defendants was malicious, intentional, deliberate, inappropriate, and/or done in reckless disregard of PLAINTIFF's statutory and constitutional rights because PLAINTIFF was NOT a flight risk, had never been convicted of a crime, and DEFENDANTS' motives (in

elevating PLAINTIFF's bail to outrageous levels) were solely spiteful and retaliatory in nature.

**NINTH CLAIM FOR RELIEF**
**(FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)**
**FIRST AND FOURTEENTH AMENDMENTS**
***"RETALIATION"***;
[AGAINST ALL DEFENDANTS]

188. PLAINTIFF hereby incorporates and re-alleges paragraphs 1 through 187, as though fully set forth herein.

189. PLAINTIFF was deprived of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution when DEFENDANTS deliberately and maliciously retaliated against PLAINTIFF for his immediate (and swift) exercise of his First Amendment Right to file a grievance and/or personnel complaint. Such illegality has deprived PLAINTIFF of rights, privileges, and immunities secured by the Fourteenth Amendment, instilled to prevent PLAINTIFF from being deprived of liberty without due process.

190. Defendants' wrongful conduct caused PLAINTIFF to suffer mental and emotional injuries; consequential and compensatory damages, in an amount to be determined at trial.

191. Further, the conduct of the individual defendants DUNSTER, FILLMORE, HAWKINS-YU, MURTHA, GREEN, HORTON, PADILLA, JERRETT, TOMILIN, BRADSTETTER, OPPELT, TORRES, KLEE, SANCHEZ, HARRIS, and FARRELL was malicious, intentional, and/or done in reckless disregard for PLAINTIFF's statutory and constitutional rights, as said wrongful conduct was without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter or prevent the recurrence of such malfeasance in the future.

## TENTH CLAIM FOR RELIEF
## RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT, TITLE 18, U.S.C. SECTION 1961, *ET. SEQ.*
[AGAINST ALL CITY OF LOS ANGELES DEFENDANTS]

192. The Los Angeles Police Dept. (LAPD), is an enterprise within the meaning of 18 U.S.C. 1961(4).  The activities of the LAPD affect interstate commerce.   DEFENDANTS acquired and/or maintained control over said enterprise through a pattern of racketeering activities, as set forth herein above, in violation of 18 U.S.C. 1962(b).

193. DEFENDANTS, being associated with said enterprise, conducted and/or participated in said enterprise's affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

194. The pattern of racketeering activities included a continuous pattern and practice involving activities including attempted murder, murder, kidnapping, extortion, and dealing in controlled substances, all chargeable under California law as felonies punishable for more than one year in prison, in that the police officer DEFENDANTS and other LAPD officers repeatedly committed assaultive and extortionate conduct against PLAINTIFF and others, and the DEFENDANTS and other LAPD officers made false arrests of PLAINTIFF, his wife JANE DOE,  and others; kidnapped PLAINTIFF, his wife JANE DOE, and others, manufactured evidence against PLAINTIFF, and others (including narcotics and weapons violations evidence), and subjected them to extortion, and kidnapping.  The pattern and practice of racketeering activities also included acts of tampering with witnesses, victims, and informants under 18 U.S.C. 1512, and retaliating against witnesses, victims, and informants under 18 U.S.C. 1513; and kidnapping, as defined by federal law.

195.  PLAINTIFF was injured in his business and/or property by reason of the conduct set forth, and specifically, PLAINTIFF was kidnapped by and had his person and property injured by DEFENDANTS.

196.  Among other forms of injury, PLAINTIFF lost employment, employment opportunities, and the wages and other compensation associated with said employment and opportunities, in that PLAINTIFF was hindered in his employment and preparation for employment.

197.  PLAINTIFF has suffered a material diminishment of his employment.

198.  DEFENDANTS unlawfully have engaged in the racketeering activities set forth in the preceding averments and, on information and belief, on separate occasions during the past 10 years, through a pattern of racketeering activity, and have acquired, directly and indirectly, control of the named enterprise, the LAPD, and to an extent, the Los Angeles County District Attorney's Office, which has engaged in and whose activities affect interstate commerce.

199. DEFENDANTS, who either are employed by or who are associated with those racketeering enterprises, have conducted those enterprises through a pattern of racketeering activity, as set forth hereinabove.

## ELEVENTH CLAIM FOR RELIEF
### CONSPIRACY TO VIOLATE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; TITLE 18, U.S.C. SECTION 1962 [d]
[AGAINST ALL CITY OF LOS ANGELES DEFENDANTS]

200. DEFENDANTS unlawfully have conspired, as set forth hereinabove, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, on information and belief, continued to do so with the aid and assistance of co-conspirators within the Los Angeles County District Attorney's Office.

201. PLAINTIFF was injured in his business and/or property by reason

1    thereof, and PLAINTIFF is entitled to damages, to be trebled.

2

3                    **TWELVTH  CLAIM  FOR  RELIEF**
4       **(FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)**
                    **EIGHTH AMENDMENT**
5       ***"DELIBERATE  INDIFFERENCE  TO  MEDICAL  NEEDS"***
6       [AGAINST DEFENDANTS FILLMORE, JERRETT, KLEE, SANCHEZ,
7              PADILLA, GREEN, HORTON]
                   ***(DECEMBER 20, 2006)***
8

9       202.   PLAINTIFF hereby incorporates and re-alleges paragraphs 1 through
10   201, as though fully set forth herein.

11      203.   PLAINTIFF was further deprived of the rights, privileges, and
12   immunities secured to him by the Eighth Amendment, when Defendants
13   FILLMORE, JERRETT, KLEE, SANCHEZ. PADILLA, GREEN, and HORTON
14   exhibited a deliberate indifference to the medical needs of PLAINTIFF, while
15   PLAINTIFF was in Defendants' physical custody, as their (December 20, 2006)
16   illegal prisoner.  Defendant JERRETT specifically and intentionally acted to deny,
17   delay, and/or interfere with PLAINTIFF's health treatment by NOT calling an
18   ambulance (for over an hour) after specifically requested to do so (both) by
19   PLAINTIFF himself, and by PLAINTIFF's wife (JANE DOE), even after
20   PLAINTIFF was writhing on the ground and screaming out in pain due to a
21   fractured vertebrae.  Such individual Defendants were aware of PLAINTIFF's
22   condition (and his need for medical assistance), but denied it anyway (out of malice,
23   spite, and hatred (for both PLAINTIFF and JANE DOE).
24
25      204.   Defendants' wrongful conduct caused PLAINTIFF to suffer physical,
26   mental and emotional injuries; consequential and compensatory damages, in an
27   amount to be determined at trial.
28

-71-

205.   Further, the conduct of the individual Defendants FILLMORE, JERRETT, KLEE, SANCHEZ, PADILLA, GREEN, and HORTON was malicious, intentional, and/or done in reckless disregard of plaintiff's statutory and constitutional rights, as said wrongful conduct was without probable cause or reasonable excuse, entitling PLAINTIFF to an award of punitive damages in an amount to deter or prevent the recurrence of such malfeasance in the future.

### THIRTEENTH CLAIM FOR RELIEF
### (FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)
### *"LOSS OF CONSORTIUM"*
[AGAINST DEFENDANTS FILLMORE, DUNSTER, TORRES]
### *(FEBRUARY 28, 2005)*

206.   PLAINTIFF re-alleges and re-pleads the allegations of all the preceding paragraphs (1-205) of this Complaint, and incorporates the same herein by reference.   PLAINTIFF was married to JANE DOE [at the time of the conscious shocking sexual assault performed by Defendant Kurt Jimmy FILLMORE against PLAINTIFF's wife (JANE DOE) on February 28, 2005],   which is more specifically identified and described within paragraphs 39-44 above.    Since such time when FILLMORE attempted to fulfill his own reflexive, personal, sexual aggrandizement [by illegally detaining and "kidnapping" JANE DOE, and viciously depriving her of liberty (and personal intimate bodily integrity) without (any) due process of law – in direct and blatant violations of [Federal Criminal] Title 18 U.S.C. Section 242; in addition to [Criminal] Title 18, U.S.C. Section 924 c(1)(A)(i) [due to the fact that such abhorrent act was committed during FILLMORE's brandishing of a firearm], PLAINTIFF has resided with JANE DOE, as her husband.

As a direct and proximate result of the sexual assault and battery performed by Defendant FILLMORE [as previously alleged and set out in this complaint;

1  behavior negligently condoned (by HWD DIV Defendants DUNSTER and
2  TORRES); who either overlooked, or beneficially partook in its acquiescence (either
3  directly or vicariously)], PLAINTIFF has been deprived of the regular and
4  reasonable support and maintenance that JANE DOE had previously provided. As a
5  direct and proximate result, PLAINTIFF was/is significantly damaged; and is
6  informed and believes that PLAINTIFF will (in the future) be deprived of (at least
7  some of) his spouse's companionship; comfort; affection; society; solace; moral
8  support; unbridled and/or normal enjoyment levels of sexual relations; the ability to
9  have (his desired quantity of) children; and physical assistance in the operation and
10 maintenance of a home(s); specifically due to her physical and/or emotional injuries
11 caused by those particular (already identified) LAPD officer Defendants, who are
12 assigned to that "clogged septic tank" widely publically known as the
13 "HOLLYWOOD DIVISION".

14

15

16

17 **FOURTEENTH CLAIM FOR RELIEF**
18 **(FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. SECTION 1983)**
   *"UNCONSTITUTIONAL CUSTOMS, POLICIESAND/OR PRACTICES;*
19 *MONELL CLAIM"*
   [AGAINST DEFENDANTS THE CITY OF LOS ANGELES, THE
20 LOSANGELES POLICE DEPARTMENT, BRATTON, LAPD
21 HOLLYWOOD DIVISION; FARRELL]

22
23 207. PLAINTIFF re-alleges and re-pleads the allegations of all the preceding
24 paragraphs (1-206) of this Complaint, and incorporates the same herein by
25 reference. PLAINTIFF alleges and believes that the actions [described above,
26 within the first thirteen Claims for Relief] occurred because Defendants CITY,
27 LAPD, LAPD [HOLLYWOOD DIVISION, BRATTON, and FARRELL]
28 promulgated, created, maintained, ratified, condoned, and enforced a series of

1  policies, procedures, customs and practices which authorized the arbitrary

2  punishment and infliction of pain, torture, and physical abuse of certain inmates,

3  prisoners, and detainees.

4       208. Following PLAINTIFF's release from the Twin Towers Correctional

5  Facility on January 19, 2006, and also January 19, 2007; and following the assaults

6  and multiple acts of malfeasance inflicted on him in January 2006, February 2006,

7  December 2006, etc., PLAINTIFF was promised that he would be provided with

8  evidence and/or the results of the multiple LAPD "internal" investigations regarding

9  such allegations.

10       209. As of the date of the filing of this [First Amended] Complaint, no results

11  from (the majority of the) related investigations have been released to PLAINTIFF,

12  and very little (if any) correspondence has been provided to PLAINTIFF.

13       210. PLAINTIFF is informed, and believes on that basis, that his injuries and

14  damages were proximately caused, in part, by the herein-described unconstitutional

15  "customary practices" and constitutionally "inadequate policies and procedures"'"

16  which routinely result in management's condoning, ratifying, and/or adopting, not

17  eliminating such unconstitutional practices, policies, and procedures.

18       211. PLAINTIFF is informed, and believes, and on that basis further alleges

19  that DEFENDANTS THE CITY OF LOS ANGELES, THE LOS ANGELES

20  POLICE DEPARTMENT, Chief BRATTON, the LAPD HOLLYWOOD

21  DIVISION, and Captain FARRELL are jointly liable, in part, for causing the

22  injuries and damages to PLAINTIFF which (as specifically described within)

23  resulted from the herein alleged unconstitutional customs, practices, policies, and/or

24  procedures of the LAPD, as more particularly described and summarized as follows:

25       a.  An inadequate or unreasonable policy requiring the proper training and

26  supervision of those officers whom they know, or should know, are prone to the

27  "excessive use of physical force", etc.;

b.  An inadequate or unreasonable policy, standard, or procedure for reviewing citizen complaints of excessive use of force by police officers;

c.  An inadequate or unreasonable policy forbidding or condemning the "code of silence" among its police officers.

As a direct, legal, and proximate cause of the grossly negligent, unreasonable, and unconstitutional customs, practices, policies and procedure, as alleged herein, PLAINTIFF suffered, and continues to suffer pain and suffering, severe mental and emotional distress from the herein incidents of excessive force, etc, incurred loss of dignity, harm to reputation, including (but not limited to) violation of his civil and constitutional rights, medical expenses, and legal fees expended in the pursuit of justice.

212. PLAINTIFF is also entitled to, and seeks injunctive and declaratory relief from the (herein described) unconstitutional policies, practices, and procedures [or the lack thereof], of the CITY OF LOS ANGELES, THE LOS ANGELES POLICE DEPARTMENT, Chief BRATTON, the LAPD HOLLYWOOD DIVISION, and Captain FARRELL.

## PRAYER FOR RELIEF

213. Because of the actions alleged above, PLAINTIFF seeks judgment against each of the DEFENDANTS, individually and severally, as follows:

A.  As to each claim, PLAINTIFF to recover special, and/or consequential damages in an amount to be determined at trial;

B.  As to each claim, general damages according to proof;

C.  As to each claim, special damages according to proof;

D.  As to each claim, with the exception of THE CITY OF LOS ANGELES,

THE LOS ANGELES POLICE DEPARTMENT, CHIEF BRATTON, and the LAPD HOLLYWOOD DIVISION, punitive damages against DEFENDANTS in their individual capacities according to proof;

E.  As to the 14th claim, preliminary and/or permanent injunctive (and) declaratory relief as to the alleged unconstitutional customs, practices, policies and procedures;

F.  For the costs of suit;

G.  For an award of reasonable statutory attorney fees, as pursuant to Title 42 USC Section 1988;

H.  Damages to be trebled on the RICO claims against each Defendant;

I.  Interest from the date of the wrongful conduct;

J.  For any other equitable or legal relief that the Court considers just and proper.

1

2

## **DEMAND FOR JURY TRIAL**

3     214. PLAINTIFF LaMONT DOE hereby demands a jury trial on all disputed

4 issues of material fact; of which PLAINTIFF [from information and belief]

5 anticipates will be (significantly) many.

6

7

8

9

10

11

12

13

14

15

16

17

18 Dated: AUGUST 11, 2008      By: _____

19                                **LaMONT DOE**

20                   PLAINTIFF, *in propria persona*

21

22

23

24

25

26

27

28